AMERICAN MULTI–CINEMA, INC.,
d/b/a National Cinema Network,
Inc., Plaintiff/Respondent,

v.

TALAYNA'S N.W., INC.,
Defendant/Appellant.

No. 62006.

Missouri Court of Appeals,
Eastern District,
Division One.

Feb. 23, 1993.

Barry Steven Ginsberg, Clayton, for defendant/appellant.

Robert Nicoll Feldmann, Chused, Bini, Kohn, Feldmann, Steib, P.C., Clayton, Charles W. Portell, Jr., St. Louis, for plaintiff/respondent.

REINHARD, Judge.

Plaintiff filed suit for breach of contract against defendant seeking to recover unpaid advertising bills which it alleged totalled $5,398.90. After a jury-waived trial, the judge entered a $4,338.60 judgment against defendant and in favor of plaintiff. Defendant appeals. We affirm.

Plaintiff is a corporation operating a movie theater at Northwest Square in St. Ann, Missouri. Defendant is a corporation operating Talayna's Restaurant at 3520 North Lindbergh Boulevard in St. Ann, Missouri.

Nina Dolan, regional marketing representative for plaintiff at the time the facts in this case occurred, was the sole witness who testified at trial. Her job consisted of selling advertising time and promotions for plaintiff at its AMC theaters in St. Louis, Missouri.

Ms. Dolan testified that in November 1989, she was contacted by Ken Westergard, who identified himself as the manager of Talayna's Restaurant on North Lindbergh Boulevard. This was one of defendant's new restaurants. Mr. Westergard told her that the restaurant was interested in advertising at plaintiff's theater at Northwest Square. Ms. Dolan further testified that defendant had been a previous advertising client of plaintiff. She stated that defendant had expressed satisfaction with the results of these prior promotional activities.

Ms. Dolan had a meeting with Mr. Westergard at the restaurant. She was asked to prepare a proposal for defendant to advertise on plaintiff's movie screens. An advertising program was set up in subsequent meetings, however, Mr. Westergard stated that he would have to get approval before signing the contract. On December 28, 1989, a contract was signed.

The contract was admitted into evidence at the trial. It stated that the advertiser was "Talayna's" and that the duration of the contract would be 52 weeks at a weekly rate of $177. The contract included a production charge of $190, the cost of making the advertising slides, and allowed a discount of $1,680. The contract was signed by Nina Dolan as "account executive" and Ken Westergard as "authorized person". It did not indicate Mr. Westergard's position with defendant.

On January 10, 1990, Ms. Dolan went to the restaurant and received a $190 check from defendant as payment for production costs. It was plaintiff's policy not to begin advertising until the production costs were paid. Advertising commenced at the theater on January 17, 1990.

The promotional campaign consisted of advertisements on plaintiff's ten movie screens which stated that patrons would receive food discounts at defendant's restaurant if they presented their movie ticket stub. The advertising slides were shown on the screens at a rate of approximately 3000 exposures per week. After the promotion had been running for a while, Ms. Dolan contacted Mr. Westergard to see if the advertising was producing positive results. She was told that the campaign was successful. As a result of its satisfaction with the promotional campaign, defendant

subsequently advertised in some of plaintiff's other theaters.

On August 15, 1990, plaintiff stopped showing defendant's promotion on their movie screen because defendant had failed to pay for the advertising. Plaintiff had sent monthly invoices to the restaurant, but had not received payment. Ms. Dolan had previously contacted Mr. Westergard inquiring about the unpaid bills and was told that defendant was having cash flow problems, but the bills "would be taken care of."

A short time after terminating the advertising, Ms. Dolan received a telephone call from "Rob", who identified himself as the new manager of the restaurant. He said that he understood there was a collection problem and that "we're going to get this cleared up." Ms. Dolan testified that Rob also stated that once the matter of unpaid bills was resolved he wanted the advertisements "to go back up on screen ... because he knew how successful the ticket redemption had been for [defendant] in creating traffic for the restaurant." The bills were never paid.

■ Our standard of review in a court-tried case is set forth in *Murphy v. Carron*, 536 S.W.2d 30 (Mo. banc 1976). It provides that the judgment of the trial court will be affirmed unless there is no substantial evidence to support it, unless it is against the weight of the evidence, or unless it erroneously declares or applies the law. *Id.* at 32.

■ In its principal point on appeal, defendant contends that the court erred in holding it liable for the contract signed by Mr. Westergard because there was not competent evidence to prove he was defendant's agent and, if he was its agent, that his actions were within the course and scope of the agency. Defendant argues that plaintiff's sole evidence of agency consisted of Mr. Westergard's extrajudicial statements and it is well recognized that out of court statements by an alleged agent cannot establish the fact or scope of agency. *Eyberg v. Shah*, 773 S.W.2d 887, 891 (Mo.App.1989).

Defendant is correct in asserting that the bulk of the evidence as to Mr. Westergard's authority to sign the contract on defendant's behalf consisted of his extrajudicial statements made to Ms. Dolan. Furthermore, his statements, as testified to by Ms. Dolan at trial, indicated that Mr. Westergard needed further authority to sign the contract after its terms were negotiated. Plaintiff's only evidence of this further authority also came from Mr. Westergard's out of court statements.

Plaintiff argues that the trial court's judgment must be affirmed because Mr. Westergard had apparent authority to execute the contract:

> The doctrine of apparent authority is one of wide-ranging application and embodies the general proposition that where a person has created such an appearance of things that it causes a third party reasonably and prudently to believe that a second party has the power to act on behalf of the first person the latter is thereby bound to the third person who relies on the appearance so created. In such case the appearance of power is the equivalent of expressly conferred power, insofar as third persons are concerned.

*Wynn v. McMahon Ford Co.*, 414 S.W.2d 330, 336 (Mo.App.1967).

It appears to us that there is not sufficient evidence to support plaintiff's apparent authority theory. However, we do believe there is substantial evidence that defendant ratified the existence of the advertising contract.

> As relates to agency, "ratification" is an express or implied adoption or confirmation, with knowledge of all material matters, by one person of an act performed in his behalf by another who at that time assumed to act as his agent but lacked authority to do so. Ratification relates back and is the equivalent of authority at the commencement of the act. It is the affirmance of a contract already made. The existence of agency and the authority of the agent can be and often is implied by proof of facts, circumstances, words, acts, and conduct of the party to be charged. As applied to the

agency or authority which is created or related back by means of ratification, it may be implied by any facts and circumstances from which it can be reasonably inferred that the party to be charged (with knowledge of the facts) acquiesced in and accepted the transaction as his own, or which are inconsistent with any other intention. The intent to ratify may be implied from the circumstances, and this implication may be made even though the person to be charged as principal may have had an intention *not* to ratify.

As to what facts, circumstances, and conduct will justify the inference of agency, no fixed rule can be stated. There is no particular mode by which it must be established. It depends upon the situation in each individual case.

\* \* \*

Probably the most certain evidence of implied ratification is the acceptance and retention of the fruits of the contract with full knowledge of the material facts of the transaction.

\* \* \*

Since ratification may be established by facts and circumstances, it is sufficient to make a question for the trier of the fact if the whole sum total of the facts and circumstances justifies *the reasonable inference* that the party charged as principal accepted the transaction as his own. It is not necessary that each separate act, fact or circumstance stand on its own as proof sufficient to justify the inference.

*Wilks v. Stone,* 339 S.W.2d 590, 595–96 (Mo.App.1960).

Based upon the above principles of law, plaintiff's evidence established defendant's ratification of the contract. Subsequent to the execution of the contract, defendant paid the $190 production costs in order to begin the advertising. After plaintiff terminated the advertising for non-payment, a subsequent manager of the restaurant acknowledged the existence of the contract and its success in creating business. He further stated that he hoped payment could be made and the contract completed. Most importantly, defendant received the benefits of plaintiff's obligation under the contract.

The court did not issue findings of fact and conclusions of law, therefore, if the judgment can be affirmed under any theory we must do so. *Wilson v. Dolan,* 767 S.W.2d 569, 571 (Mo.App.1988). Defendant's first point is denied.

Defendant also contends that the amount of damages awarded plaintiff was against the weight of the evidence. Defendant's point is based on its allegation that the advertising services were provided for 22 weeks. This is not supported by the record. Ms. Dolan testified that the advertising started on January 17, 1990, and stopped on August 15, 1990, which is a period of 30 weeks. The damages awarded were not against the weight of the evidence.

Judgment affirmed.

AHRENS, P.J., and CRIST, J., concur.