CORRINGTON PARK ASSOCIATES,
L.L.C., Appellants,

v.

BAREFOOT, INC., Respondents.

No. WD 55401.

Missouri Court of Appeals,
Western District.

Submitted Sept. 10, 1998.

Decided Jan. 12, 1999.

Alan L. Markowitz, Kansas City, MO, Jacqueline M. King, Kansas City, MO, for appellant.

Anthony A. Stein, Kansas City, MO, for respondent.

Before SMART, P.J., ELLIS and HOWARD, JJ.

SMART, Judge.

Appellant Corrington Park Associates, L.L.C. ("Corrington Park"), appeals the judgment entered in favor of respondent, Barefoot, Inc., on a petition for unlawful detainer, § 441.080, RSMo 1994.[1] Corrington Park appeals the trial court's finding of a third-party tenant's apparent authority to accept rent checks from Barefoot, Inc. on behalf of Corrington Park. Corrington Park argues that the trial court erroneously applied the law of apparent authority and that Barefoot, Inc. failed to prove that apparent authority existed in the third-party tenant.

Because we hold that the evidence establishes only that the third-party tenant had apparent authority to accept rent payments, but not to extend leases, we reverse the judgment of the trial court.

**Factual Background**

Corrington Park is a Delaware limited liability corporation licensed to do business in Missouri, with its principal place of business in Kansas City, Missouri. Corrington Park owns property, primarily warehouse space, and is in the business of leasing that property to tenants. Corrington Park has no employees, but rather is owned by three individuals including Mr. Stanley L. Guillaume. Mr. Guillaume is the managing partner of Corrington Park and is responsible for negotiating leases with tenants, paying the corporation's bills, collecting rent from the tenants and making sure the properties are kept in good repair.

On April 6, 1992, Corrington Park entered into a five-year lease with Snake 'n' Rooter for approximately 2,200 square feet of office and warehouse space located at 1652 North Corrington Avenue in Kansas City, Missouri. The lease commenced on May 1, 1992, and was to expire on October 31, 1997. Rent in the amount of $1,000.00 was to be paid at the beginning of each month. On April 22, 1994, this lease was assigned by Snake 'n' Rooter to Barefoot, Inc. through an assignment of lease. The assignment was signed by Mr. Guillaume on behalf of Corrington Park, Mr. Howard Metz on behalf of Snake 'n' Rooter and Mr. Jeffrey Barefoot, president of Barefoot, Inc., on behalf of Barefoot, Inc. Under the terms of the assignment, Barefoot, Inc.'s lease expired on October 31, 1997.

At approximately 5:30 p.m. on October 31, 1997, the day the lease was to expire, Mr. Barefoot went to the office of 800 Call–KC to deliver a $2,000.00 rent check in an effort to extend the lease two months. The office to which Mr. Barefoot went, 800 Call–KC, was another tenant of Corrington Park. Tenants had been allowed to deliver rent checks to this office in the past and to obtain a receipt for their rent payments. Ms. Charlotte Nichols was in the office of 800 Call–KC when Mr. Barefoot arrived. Mr. Barefoot told Ms. Nichols that he was there to drop off his rent check, and he asked her to sign a receipt for the check. Ms. Nichols told Mr. Barefoot that her boss, Mr. Gary Nafsiger, had instructed her that she was no longer authorized to sign receipts on Corrington Park's behalf. Ms. Nichols had previously accepted rent checks from Mr. Barefoot and provided written receipts on Corrington Park's behalf. Mr. Guillaume had always previously accepted the rent checks that Mr. Barefoot delivered to 800 Call–KC.

Despite Ms. Nichols' refusal, Mr. Barefoot continued to implore her to accept the check and sign the typewritten receipt he had prepared. She eventually relented and complied with his request. The receipt Ms. Nichols signed stated:

> Two thousand and no dollars is received and accepted from Snake 'n' Rooter for rent for November and December, 1997. Rent is for 1627 North Corrington, Kansas City, Missouri 64120. This represents payment in full.

CORRINGTON PARK ASSOCIATES

BY: /s/ Charlotte M. Nichols

Ms. Nichols signed her name on the signature line labeled "Corrington Park Associ-

---

1. All statutory references are to the Revised Missouri Statutes, 1994, unless otherwise indicated.

ates." Ms. Nichols was not aware that Barefoot Inc.'s lease had expired, nor did she understand that by accepting Mr. Barefoot's check and signing the receipt, she could be viewed as extending the lease on behalf of Corrington Park Associates.

Corrington Park became aware of Barefoot Inc.'s continued possession of the premises on November 1, 1997. Mr. Nafsiger called Mr. Guillaume and told him that Ms. Nichols received a rent check from Barefoot, Inc. after hours the night before. Mr. Guillaume retrieved the rent check from 800 Call–KC and returned it to Mr. Barefoot along with a letter which stated in pertinent part:

> Enclosed, please find your check in the amount of $2,000 which we are returning to you because you are no longer considered to be a tenant of Corrington Parks [sic]. Accordingly, we demand that you vacate the premises immediately. As you well know, our lease expired on October 31, 1997, and you are currently considered to be a holdover tenant.

In spite of Mr. Guillaume's letter, Barefoot, Inc. refused to vacate the premises. Corrington Park then filed a petition in unlawful detainer against Barefoot, Inc. seeking delivery of possession of the premises; confirmation of the lease's termination; double the rental value for the time of Barefoot Inc.'s unlawful possession of the premises; and all costs pursuant to § 41.080. The case was bench-tried on January 13, 1998. At the close of all the evidence, the trial court entered judgment in favor of Barefoot, Inc.

### Issues

We will simultaneously address both of Corrington Park's points on appeal. Corrington Park contends that the trial court erred in finding that Ms. Nichols had apparent authority to accept the rent payment from Mr. Barefoot on October 31, 1997. Corrington Park argues that it did not consent to Ms. Nichols accepting rent payments and that Mr. Barefoot knew that Ms. Nichols did not have the authority to act as Corrington Park's agent. Corrington Park further contends that Barefoot, Inc. did not sustain its burden of proving that an agency existed or the scope of that agency.

### Standard of Review

Our review of a court-tried case is "upon both the law and the evidence...." Rule 73.01(c). We will sustain the trial court's judgment unless there is no substantial evidence to support it, it is against the weight of the evidence, it erroneously declares the law or it erroneously applies the law. *Murphy v. Carron*, 536 S.W.2d 30, 32 (Mo. banc 1976). Typically, under this standard of review, great deference is given to judgments of the trial court founded on factual determinations. *In re Marriage of Fry*, 827 S.W.2d 772, 775–76 (Mo.App.1992). However, where the trial court erroneously applies the law, no such deference is given to its judgment. *Id.* at 776.

### Apparent Authority

Apparent authority is established when a principal, either by its acts or representations, leads third parties to believe that authority has been given to an agent. *Link v. Kroenke*, 909 S.W.2d 740, 745 (Mo.App. 1995). The doctrine of apparent authority:

> embodies the general proposition that where a person has created such an appearance of things that it causes a third party reasonably and prudently to believe that a second party has the power to act on behalf of the first person the latter is thereby bound to the third person who relies on the appearance so created.

*Jansen v. Pobst*, 922 S.W.2d 43, 46 (Mo.App. 1996) (quoting *Wynn v. McMahon Ford Co.*, 414 S.W.2d 330, 336 (Mo.App.1967)). In order for apparent authority to be found, three elements must be met: (1) the principal must manifest consent to the exercise of the authority or knowingly permit the agent to exercise the authority; (2) the person relying on the existence of the authority must know of the surrounding facts and, acting in good faith, have a reason to believe and actually believe that the agent had authority to act; and (3) the person relying on the authority must change his position or suffer injury if the existence of the authority is denied. *Earl v. St. Louis Univ.*, 875 S.W.2d 234, 238 (Mo.App.1994). The facts and circumstances

of each case must give rise to the inference that the principal has authorized the agent to act on the principal's behalf. *Cohn v. Dwyer,* 959 S.W.2d 839, 844 (Mo.App.1997). There is no set rule establishing whether an inference of agency is proper; the facts of each individual case determine that. *American Multi–Cinema, Inc. v. Talayna's N.W., Inc.,* 848 S.W.2d 557, 560 (Mo.App.1993) (quoting *Wilks v. Stone,* 339 S.W.2d 590, 595–96 (Mo. App.1960)). The burden of establishing the presence of an agency rests upon the party alleging the relationship's existence. *Mark Century Corp. v. Tiger Broadcasting Co.,* 509 S.W.2d 737, 739 (Mo.App.1974).

 Corrington Park often received rent checks from Mr. Barefoot and other tenants through Ms. Nichols. Mr. Guillaume accepted each of these rent checks in the past. Corrington Park was aware of Mr. Barefoot's practice of paying rent through Ms. Nichols. Although Mr. Guillaume revoked any actual authority granted to Ms. Nichols to receipt for sent payments, that revocation was not communicated to Barefoot, Inc. prior to Mr. Barefoot's visit to the 800–Call KC office on October 31, 1997. However, Ms. Nichols informed Mr. Barefoot at that time that she lacked authority to receipt for rent. It is undisputed that Ms. Nichols lacked the actual authority to extend the lease. The issue presented to the trial court was whether Corrington Park is bound to an extension of the lease by the doctrine of apparent authority.

 Apparent authority exists only to the extent that it is reasonable for a third person dealing with the agent to believe that the agent is authorized. *Hamilton Hauling, Inc. v. GAF Corp.,* 719 S.W.2d 841, 846 (Mo. App.1986). The evidence shows that there had been a "strained" relationship between Corrington Park and Barefoot, Inc. for a number of months because of tension over Barefoot's customary tardiness in paying rent. Mr. Guillaume and Mr. Barefoot avoided speaking to each other for several months. Mr. Barefoot chose not to discuss an extension of the lease with Mr. Guillaume. Also, he did not mention anything about extending the lease to Ms. Nichols when he asked her to sign the receipt for Barefoot, Inc.'s rent.

Ms. Nichols testified that she did not know Barefoot, Inc.'s lease expired on October 31, 1997. Ms. Nichols told Mr. Barefoot she had no authority to receipt for the rent check, but Mr. Barefoot importuned her until she relented and agreed to provide him with a receipt.

This court finds there is no evidence that Mr. Barefoot believed, in good faith, that Ms. Nichols had the authority to extend Barefoot, Inc.'s lease with Corrington Park. Mr. Barefoot arrived at 5:30 p.m., after the normal close of business, to pay rent for both November and December, 1997, in a transparent attempt to trap Mr. Guillaume into an involuntary extension. Mr. Barefoot presented Ms. Nichols with a typewritten receipt that he had prepared, stating that she was accepting November and December rent from him. At the bottom of the receipt was a signature line above which Mr. Barefoot had placed the words "Corrington Park Associates." Next to the signature line, he had placed the word "by." Mr. Barefoot had not prepared any receipt on any previous occasions. In spite of Ms. Nichols' protestations, Mr. Barefoot insisted that Ms. Nichols sign the receipt he had prepared.

Mr. Barefoot knew that his lease expired on October 31, 1997. He also knew his relationship with Mr. Guillaume was such that if he dealt with Mr. Guillaume directly, Barefoot, Inc.'s lease would not be extended. He therefore sought to manipulate an extension of his lease by paying two months' rent after hours on October 31, 1997, and acquiring an official looking receipt on behalf of Corrington Park, signed by Ms. Nichols.

While there was evidence that Ms. Nichols previously had apparent authority to accept rent checks from Mr. Barefoot on behalf of Corrington Park, we fail to find substantial evidence that, at the time in question, Mr. Barefoot believed in good faith that Ms. Nichols' authority encompassed extending leases on Corrington Park's behalf. Barefoot, Inc. had the burden of proof on the issue of apparent authority. *Mark Century Corp.,* 509 S.W.2d at 739. For the reasons discussed above, we conclude the judgment was not supported by substantial evidence. The trial court erred in finding that Ms.

Nichols had apparent authority to extend the lease.

The judgment of the trial court is reversed and the case is remanded for further proceedings.

ELLIS and HOWARD, JJ., concur.