**Ed CLEAR, Appellant,**

v.

**MISSOURI COORDINATING BOARD FOR HIGHER EDUCATION, Respondent.**

**No. ED 76885.**

Missouri Court of Appeals, Eastern District, Division Two.

June 30, 2000.

Motion for Rehearing and/or Transfer to Supreme Court Denied Aug. 3, 2000.

Application for Transfer Denied Aug. 29, 2000.

Susan H. Mello, Clayton, for appellant.

James L. Matchefts, Jefferson City, for respondent.

SULLIVAN, Judge.

Edward Clear ("Clear") appeals from a judgment of the trial court affirming a decision by the Missouri Coordinating Board for Higher Education ("Board") issuing a wage withholding order to Clear's employer for collection of a guaranteed student loan. We affirm.

On January 3, 1994, an Application and Promissory Note for a Loan Under the PLUS[1] Loan Program ("Note") was executed to finance the enrollment of Megan Clear ("Megan"), Clear's daughter, at Barnes College. The Note identifies Clear as the borrower and includes Clear's social security number and the name of his employer. The borrower's signature line is signed "Edward Clear." The lender making the loan is Boatmen's National Bank ("Boatmen's") and the loan amount is $4,300. The Board guaranteed repayment of the loan to Boatmen's in the event of Clear's default.

On January 14, 1994, Clear signed a form authorizing Boatmen's to obtain his credit report in connection with the PLUS loan application.[2] In February, Boatmen's issued a student loan check in the amount of $3,956 payable to Clear and Barnes Hospital School of Nursing. Clear endorsed the check and gave it to Megan to bring to Barnes.

On February 2, 1994, the Board issued a repayment schedule and disclosure statement for the PLUS loan listing Clear as the borrower. Clear received a repayment

---

1. PLUS is an acronym for Parent Loan for Undergraduate Students, a federal program in which the parent is the borrower on the loan. 20 U.S.C. 1078–2 (1999).

2. The form provided: "By signing below, I authorize the lender listed on my Federal PLUS loan application to obtain a report of my credit history. I understand that the lender will review the information on my credit report to determine whether my credit history is acceptable or adverse. If my credit is determined adverse, I may contact the lender regarding any extenuating circumstances or erroneous data."

coupon book, which he provided to Megan. Megan made two payments totaling $102.54.

On August 10, 1994, Clear completed an application requesting a one-year forbearance on the PLUS loan due to "economic hardship." The application identifies Clear as the borrower and includes information about Clear's income and expenses. The forbearance was granted retroactively from May 1, 1994 to April 30, 1995. After the forbearance period ended, no payments were made on the loan.

On June 3, 1996, the Board purchased the defaulted loan for $4,724.20, representing the principal and interest due. Clear acknowledged receiving a letter of default to which he responded by hand-written letter indicating that "[t]his is a just debt, but it's [Megan's] debt. She is responsible for the payments."

On November 16, 1996, the Board mailed a Notice Prior to Wage Withholding ("NPWW") to Clear at 6400 A West Park, St. Louis, MO 63139. Clear testified that this address was his home address on November 16, 1996 and thereafter, but he denied receiving the NPWW. The Board issued the NPWW "pursuant to federal law... 20 U.S.C. subsection 1095a et seq...." The NPWW advised Clear that, unless he made a repayment agreement with the Board or requested a hearing by December 16, 1996, the Board would issue a wage withholding order to his employer. The Board received no response from Clear. In January 1997, the Board issued a wage withholding order to Clear's employer. Clear alleges his notice of the order was through his paycheck after his employer began taking amounts from his wages.

On April 9, 1997, the Board notified Clear by letter that it would consider a request for a hearing on the wage withholding order pursuant to 34 C.F.R.

682.410(b)(10) if he completed and returned a Request for Hearing or Exemption form by April 30. Clear complied with this procedure.

The administrative hearing was held on May 21, 1997. At the administrative hearing, Clear testified that he told Megan he would co-sign the Note for her but that he never did. Although Clear's attorney initially indicated that they did not dispute that the signature on the Note was Clear's signature, Clear testified that the signature was not his. However, Clear admitted to signing the credit report authorization, endorsing the loan check, receiving the repayment coupons, completing the forbearance application, and receiving the letter of default.[3]

On June 4, 1997, the hearing officer issued his decision denying Clear's objections to the wage withholding order and holding Clear responsible for the balance of the loan in the amount of $6,734.13. The hearing officer concluded that the Board sent sufficient notice and service of notice to Clear and that Clear ratified the signature and obligation on the Note.[4]

Clear filed a Petition for Review and subsequently a Motion for New Hearing with the trial court, resulting in the Board's decision being affirmed.

Although the appeal is from the trial court's judgment, we review the Board's findings and conclusions rather than the trial court's judgment. *Smith v. Morton*, 890 S.W.2d 403, 405 (Mo.App. E.D.1995). Review of the Board's decision is limited to determining whether it is supported by competent and substantial evidence upon the whole record, whether it is arbitrary, capricious, or unreasonable, or whether the Board abused its discretion. *Id.* The evidence is considered in the light most favorable to the Board, together with all reasonable inferences which support it.

3. The hearing officer found that the signature on the Note did not appear to be the same signature as those on the other documents.

4. As a result, the hearing officer did not determine the authenticity of the signature on the Note.

*Id.* If the evidence would support either of two opposed findings, we are bound by the Board's findings. *Id.* However, we are not bound by the Board's interpretation or application of the law. *Lucas–Hunt Village Associates, Ltd. Partnership v. State Tax Comm'n of Missouri*, 966 S.W.2d 308, 309 (Mo.App. E.D.1998). We presume the Board's decision to be correct. *Monia v. Melahn*, 876 S.W.2d 709, 711 (Mo.App. E.D.1994).

Clear initially argues that Section 173.115[5] is unconstitutional in that it violates the separation of powers clause in Article V, Section 5 of the Missouri Constitution and that the procedures followed by the Board did not comply with Section 173.115 and did not afford him due process. The Board argues that Section 173.115 is irrelevant to this appeal.[6] We agree with the Board.

■ Both the NPWW and the Board's April 9 letter to Clear indicated that the Board's actions were pursuant to federal law 20 U.S.C. 1095a et seq. and related regulations. We need not address Clear's arguments concerning provisions of Section 173.115 because the federal statute expressly preempts state law. *See Nelson v. Diversified Collection Services, Inc.*, 961 F.Supp. 863, 872 (D.Md.1997). The garnishment requirements outlined in 20 U.S.C. 1095a(a) are preceded by the phrase "notwithstanding any provision of State law." Other jurisdictions also have construed this language to expressly preempt state law. *See State ex rel. Colorado State Banking Bd. v. Resolution Trust Corp.*, 926 F.2d 931, 936–937 (10th Cir.1991); *Arkansas State Bank Comm'r v. Resolution Trust Corp.*, 911 F.2d 161, 169–170 (8th Cir.1990); *U.S. v. Hunter*, 700 F.Supp. 26, 27 (M.D.Fla.1988).

Further, the notice provisions under 20 U.S.C. 1095a (a)(2) require creditors to mail written notice to the debtor's last known address thirty days before the garnishment and to include certain information in the notice, such as the amount of the loan obligation and "an explanation of the rights of the individual" under the section. The Board complied with these requirements, and the notice provisions under 20 U.S.C. 1095a have been held to satisfy due process standards. *Nelson*, 961 F.Supp. at 868.

■ Clear denies receiving the NPWW. However, the hearing officer concluded that the Board sent the NPWW to Clear. There is a presumption that a letter duly mailed has been received by the addressee. *Ins. Placements, Inc. v. Utica Mut. Ins. Co.*, 917 S.W.2d 592, 595 (Mo. App. E.D.1996). When proof of proper mailing is adduced, the presumption may be rebutted by evidence showing that the mailing was not received. *Id.* Evidence of non-receipt does not nullify the presumption but leaves the question for the determination of the finder of fact under all the facts and circumstances of the case. *Id.*

■ Although Clear denies receiving the NPWW, he admits that the address to which the Board sent the NPWW was his home address on the date it was sent and thereafter. Although Clear testified that every time he received anything from the Board, he responded to it, due process does not require that the interested party actually receive the notice. *Nelson*, 961 F.Supp. at 869. The hearing officer allowed a copy of the NPWW, on which Clear's name and address appeared, into evidence as an exhibit at the hearing. As we must consider the evidence in the light most favorable to the Board, together with all reasonable inferences which support it, we cannot determine that the hearing officer's conclusion that the Board sent sufficient notice and service of notice to Clear is unsupported by competent and substan-

---

**5.** All statutory references are to RSMo (1994), unless otherwise indicated.

**6.** Although the hearing officer references Section 173.115 as the governing statute, the trial court concluded Section 173.115 to be irrelevant.

tial evidence. If the evidence would support either of two opposed findings, we are bound by the Board's findings. *Morton,* 890 S.W.2d at 405.

■ Clear also contends that he was not given proper notice of the ratification claim. At the beginning of the hearing, Clear's attorney indicated that they did not dispute that the signature on the Note was Clear's signature. Subsequently, however, Clear testified that the signature was not his. Only at this point did ratification become an issue, and it did so upon the testimony of Clear. Thus, the Board could not give prior notice of the ratification claim because the claim did not exist prior to the hearing. Also, Clear's counsel did not object to the Board's counsel raising the ratification issue in his closing argument nor did Clear's counsel ask for a continuance to further investigate the issue.

■ Additionally, Clear argues that the hearing officer's finding that Clear ratified the signature and obligation on the Note is unsupported by competent and substantial evidence and a misapplication of the law. An individual who was not originally bound by an agreement will become bound if he or she ratifies the agreement. *Cohn v. Dwyer,* 959 S.W.2d 839, 844 (Mo.App. E.D.1997). An individual ratifies an agreement if he or she either expressly or by implication confirms or adopts the agreement with knowledge of its contents. *Id.* The implication may be made even though the individual did not intend to ratify. *American Multi-Cinema, Inc. v. Talayna's N.W., Inc.,* 848 S.W.2d 557, 560 (Mo.App. E.D.1993).

Although Clear denied signing the Note, he admitted to signing the credit report authorization, endorsing the loan check, receiving the repayment coupons, completing the forbearance application, and receiving the letter of default. None of these

items designated Clear as a "co-signer." Clear knew that Megan wished to apply for a student loan. Also, the forbearance application specifically identifies Clear as the only borrower. The Board relied on this conduct. Thus, the hearing officer's finding that Clear ratified the signature and obligation on the Note is supported by competent and substantial evidence and is not a misapplication of the law.

■ Clear also contends that the hearing officer's decision was based on improper hearsay.[7] Section 536.070(10) governs the admissibility of business records in an administrative hearing. It provides in relevant part:

> Any writing or record ... made as a memorandum or record of an act, transaction, occurrence or event, shall be admissible as evidence of the act, transaction, occurrence or event, if it shall appear that it was made in the regular course of any business, and that it was the regular course of such business to make such memorandum or record at the time of such act, transaction, occurrence, or event or within a reasonable time thereafter. All other circumstances of the making of such writing or record, including lack of personal knowledge by the entrant or maker, may be shown to affect the weight of such evidence, but such showing shall not affect its admissibility.

■ Further, the document's custodian or preparer need not be present to sponsor the document. *State ex rel. Sure-Way Transp., Inc. v. Div. of Transp. Dep't of Economic Dev.,* 836 S.W.2d 23, 26 (Mo. App. W.D.1992). A research assistant responsible for administering the wage garnishment program for the Board presented the Board's exhibits. She explained each exhibit individually and specifically. Clear attempts to distinguish *Sure-Way* by arguing that some of the exhibits were not created by the Board. However, none

---

7. Clear refers specifically to the following items: (1) the Note; (2) the repayment schedule and disclosure statement; (3) several

Board writings documenting attempted contacts with Clear and claiming default and delinquent amounts; and (4) the NPWW.

of the Board's exhibits to which Clear's counsel cites as being created by outside sources go directly to the determination of Clear's liability for the loan. Thus, no prejudice resulted by the admission of those exhibits, and the hearing officer's decision was not based on improper hearsay.

Additionally, Clear argues that the hearing officer's decision was based on a disregard of Clear's testimony in the absence of credibility findings. The record indicates that the hearing officer did not ignore Clear's testimony, but rather the officer weighed it against the other evidence before him.

Clear also contends that the hearing officer's decision should be reversed because it was never approved by the Board as required by Section 173.115.6. We need not address this issue because 20 U.S.C 1095a(b) provides that the "hearing official shall issue a final [written] decision at the earliest practicable date...."

The Board's decision is supported by competent and substantial evidence upon the whole record. The decision is not arbitrary, capricious, or unreasonable. The Board did not abuse its discretion. Accordingly, the judgment of the trial court is affirmed.[8]

CRANE, P.J., and ROBERT G. DOWD, J., concur.

---

8. Respondent's Motion to Dismiss the Appeal or, in the alternative, to Strike Appellant's Brief is denied. Although Appellant's brief is not a good example of Rule 84.04, we use our discretion not to impose the harsh penalty of dismissal.