

# In the Missouri Court of Appeals
# Eastern District
## DIVISION TWO

| | | |
|---|---|---|
| JEREMY SCOTT, AND STEPHANIE SCOTT, | ) ) ) | No. ED113072 |
| Appellants, | ) ) ) | Appeal from the Circuit Court of St. Louis County |
| vs. | ) ) | 22SL-CC03929 |
| FARM BUREAU TOWN AND COUNTRY INSURANCE COMPANY OF MISSOURI, | ) ) ) | Honorable Kristine A. Kerr |
| Respondent. | ) | Filed: April 22, 2025 |

Before Lisa P. Page, P.J., Rebeca Navarro-McKelvey, J., and Virginia W. Lay, J.

Jeremy and Stephanie Scott (Scotts) appeal from the trial court's entry of summary judgment in favor of Farm Bureau Town and Country Insurance Co. of Missouri (Farm Bureau). The Scotts' lawsuit against Farm Bureau demanded it provide coverage and indemnification for damage from a January 30, 2020 car accident (Accident), when they allege their Farm Bureau policy (Policy) was in full force and effect. We reverse and remand for further proceedings.

## BACKGROUND

Jeremy Scott was involved in the Accident on January 30, 2020, with another driver who is not a party to this lawsuit. The Scotts filed a lawsuit against Farm Bureau seeking coverage for damage and indemnification pursuant to their insurance policy. However, Farm Bureau filed an answer denying the Policy was in effect at the time of the Accident. Farm Bureau further filed a motion for summary judgment arguing it had "non-renewed said Policy in advance of the

expiration date by mailing written notice of its intention to non-renew" the Policy, which was set to expire December 14, 2019.  Specifically, on November 8, 2019, Farm Bureau provided it "sent its Notice of Non-renewal by certified mail, . . . to [the Scotts'] last known address, informing [the Scotts] that Defendant Farm Bureau could not renew [the Scotts'] automobile insurance coverage due to a loss ratio of 124.54% on [the Scotts'] account."  The Policy contained a provision which stated:

> ***We agree****, unless we mail to you a written notice of cancellation, notice of expiration, or a notice of our intention not to renew, **to renew the policy for the next policy period** upon your payment of the renewal premium. . . .  A notice of our intention to not renew will be mailed to your last known address at least 30 days before the end of the current policy period.  We will use regular mail.  The mailing of the notice shall be sufficient proof that notice was given.*

(Emphasis added).

Farm Bureau's regular and systematic business practice was to have its computer system automatically prepare such notice of non-renewal letters and an administrative specialist (Administrative Specialist) would package, address, stamp, and deliver such letters by certified mail.  But here, the Administrative Specialist testified by affidavit that "a responsibility of [her] job is to take the underwriting letters that are automatically generated by our system in advance or generated by an underwriter, put them in envelopes and ensure an address [is] present on the letter, apply the name of the policy owners to our Certificate of Mailing form, and deliver such letters to the mailroom staff to be mailed and stamped."  She stated that "[o]ur Certificate of Mailing form includes the names of the recipients, their city and state, and the recipient's policy number," and "[o]n November 8, 2019, [she] prepared and mailed out letters dated November 11, 2019 . . ."; that "[the Scotts] are listed on the Certificate of Mailing form [she] prepared on November 8, 2019, for letters [she] prepared to mail that day"; "[t]he Certificate of Mailing form [she] prepared that day was properly stamped with the USPS seal for Jefferson City, MO on

2

November 8, 2019"; "[she] also prepared and sent a letter to [the Scott's credit union] informing them that [the Scotts'] coverage would expire on December 14, 2019"; and "[n]either the non-renewal letter to [the Scotts] nor the notice to the credit union was returned as 'non-deliverable' to Farm Bureau."

Farm Bureau acknowledged the Scotts made monthly payments via direct debit from their bank account prior to the non-renewal of the Policy. However, Farm Bureau did not debit the Scotts' account after October 14, 2019; thus, the Policy expired on December 14, 2019, before the January 30, 2020 Accident. The Scotts did not otherwise pay Farm Bureau for continued or new coverage before the Accident.

The Scotts responded to the motion for summary judgment by denying receipt of the notice Farm Bureau allegedly sent, and that the notice was sent by "certified mail" because the Administrative Specialist's affidavit did not support Farm Bureau's claim she sent the letter by "certified mail" and there was no identification of a certified mail number anywhere on their documents. They alleged Farm Bureau misunderstood the "certificate of mailing," which is different from the "certified mail" it claimed was sent to the Scotts, and was not approved by the postal regulations. Indeed, in his deposition, the company representative N.S. testified he did not know whether the "certificate of mailing" was compliant or even if it was sent by certified mail as stated in Farm Bureau's motion for summary judgment. The Scotts asserted there was no testimony notice was actually sent.

The Scotts' regular payment was available via the direct debit from the Scott's personal bank account as the monthly premium was debited prior to the non-renewal of the policy. The Scotts alleged their signed authorization for Farm Bureau to withdraw funds from their bank

3

account was active and available with sufficient funds at all relevant times, and it was never rescinded.

Moreover, the Scotts did not receive a notice of non-renewal from the credit union, which held the note on the car at issue. In fact, the only communication they received from anyone regarding the policy renewal occurred when Farm Bureau sent them declaration sheets and identification cards for the relevant car which reflected insurance coverage on the date of the Accident. The Scotts asked the court to take judicial notice of 39 CFR § 111.1 (2019) and the Domestic Mail Manual section 503.5.1.7 referenced in 39 CFR § 111.1, as well as the United States Postal Service (USPS) certificate of mailing form, form 3665, which requires an address.

Farm Bureau replied that the applicable statute, Section 379.118 RSMo (Cum. Supp. 2018),[1] only requires that the notice be mailed, not received, and under the terms of the parties' policy that was set to expire on December 14, 2019, proof of mailing is sufficient evidence that notice was given. Farm Bureau claimed as long as the notice was sent by certificate of mailing in compliance with the statute, the policy was properly non-renewed, and therefore the Scotts had no coverage with Farm Bureau as of December 14, 2019. Moreover, postal regulations permit use of private forms in place of Form 3665, and do not specify that a full address must be included on the private forms. They asserted the 2013 bank authorization to withdraw funds electronically has no bearing on whether the Scotts accepted any offer to renew or Farm Bureau non-renewed the Scotts' coverage.

The trial court granted Farm Bureau's motion for summary judgment based on the record, pursuant to Rule 74.04(c), without oral argument, "for the reasons set forth in [Farm Bureau's]

---

[1] All further statutory references are to RSMo (Cum. Supp. 2018).

4

memorandum in support of its motion for summary judgment and reply brief." This appeal follows.

## DISCUSSION

The Scotts raise two points on appeal. First, they allege the trial court erred in granting summary judgment to Farm Bureau because there was a disputed issue of material fact in that there was substantial evidence that the notice of non-renewal was not sent as required by law, and merely sending the notice was not conclusive evidence that it was sent as the law requires. Second, the Scotts allege the trial court erred in granting summary judgment because there was a disputed issue of material fact about consideration for the insurance policy in that the Scotts tendered payment for the renewal of the insurance policy. We agree Farm Bureau was not entitled to summary judgment regarding notice of non-renewal and grant point one. We further hold the determination of whether notice was proper is dispositive of whether the policy existed and essentially moots the issue of consideration for purposes of this appeal; thus, we will not review point two.

### *Standard of Review*

Summary judgment is proper if there are no genuine issues of material fact and the moving party is entitled to judgment as a matter of law. *Green v. Fotoohighiam*, 606 S.W.3d 113, 115 (Mo. banc 2020) (internal citation omitted). The trial court makes its decision regarding summary judgment based on the pleadings, the record submitted, and the law. *Id.* Our review of whether summary judgment was proper is *de novo* and based on the same criteria. *Id.* "The record below is reviewed in the light most favorable to the party against whom summary judgment was entered, and that party is entitled to the benefit of all reasonable inferences from the record." *Sachtleben v. Alliant Nat'l Title Ins. Co.*, 687 S.W.3d 624, 629 (Mo. banc 2024)

5

(internal quotation omitted). As the moving party, Farm Bureau has the burden to establish a right to judgment as a matter of law based on the record submitted. *Robinson v. Lagenbach*, 439 S.W.3d 853, 856 (Mo. App. E.D. 2014).

*Analysis*

The interpretation of an insurance policy is a question of law that this court determines *de novo*. *Ritchie v. Allied Prop. & Cas. Ins. Co.*, 307 S.W.3d 132, 135 (Mo. banc 2009). In construing terms of an insurance policy, we apply "the meaning which would be attached by an ordinary person of average understanding if purchasing insurance," and we resolve ambiguities in favor of the insured and against the insurance company. *Id.* (quoting *Seeck v. Geico Gen. Ins. Co.*, 212 S.W.3d 129, 132 (Mo. banc 2007)). "To determine the ordinary meaning, this court consults standard English language dictionaries." *Progressive Nw. Ins. Co. v. Talbert*, 407 S.W.3d 1, 6 (Mo. App. S.D. 2013) (internal quotation omitted). However, we need not apply rules of construction when a contract is clear and unambiguous. *Id.* Where insurance policies are unambiguous, they will be enforced as written, absent a statute or public policy requiring coverage. *Id*. at 9 (citing *Rodriguez v. Gen. Acc. Ins. Co. of Am.,* 808 S.W.2d at 382 (Mo. banc 1991)); *see also State Farm Mut. Auto. Ins. Co. v. Butler,* 904 S.W.2d. 350, 352 (Mo. App. E.D. 1995).

Farm Bureau argued it had not renewed the Policy in advance of the expiration date by mailing written notice of its intention to non-renew the Policy, which was set to expire December 14, 2019. The Policy contained a provision which stated:

> **We agree**, *unless we mail to you a written notice of cancellation, notice of expiration, or a notice of our intention not to renew*, **to renew the policy for the next policy period** upon your payment of the renewal premium. . . . A notice of our intention to not renew will be mailed to your last known address at least 30 days before the end of the current policy period. We will use regular mail. The mailing of the notice shall be sufficient proof that notice was given.

6

(Emphasis added).

The Missouri legislature codified the requirements for notice of cancellation and renewals in Section 379.118, which Farm Bureau alleges it accomplished here. Section 379.118.1 states, in relevant part:

> 1. If any insurer proposes to cancel or to refuse to renew a policy of automobile insurance delivered or issued for delivery in this state . . . , it shall, on or before thirty days prior to the proposed effective date of the action, send written notice of its intended action to the named insured at his last known address. Notice shall be sent by United States Postal Service certificate of mailing, first class mail using Intelligent Mail barcode (IMb), or another mail tracking method used, approved, or accepted by the United States Postal Service . . .

The language in the Policy and the statute both address the issue of the insurance company's "intention not to renew" and "refus[al] to renew" an insurance policy, and require the notice shall be sent at least thirty days in advance of such event taking effect. However, when comparing the two, the Policy only requires the insurance company to "use regular mail" which "mailing of the notice shall be sufficient proof that notice was given." We find the statute more specifically details the "written notice of its intended action" must be sent "by United States Postal Service certificate of mailing, first class mail using Intelligent Mail barcode (IMb), or another mail tracking method used, approved, or accepted by the United States Postal Service." Where there is a conflict between the Policy and statute, the statutory requirements supersede the conflicting policy provisions and become part of the insurance policy itself. *See Halpin v. Am. Family Mut. Ins. Co.*, 823 S.W.2d 479 (Mo. banc 1992). (The Court held the Missouri Motor Vehicle Financial Responsibility Law (MVFRL), Section 303.190, which requires that motor

7

vehicle liability insurance policies provide $25,000 per person and $50,000 per accident coverage to injured persons, partially invalidated a "household exclusion" clause).[2]

Accordingly, the question here is not whether Farm Bureau sent the notice of non-renewal to the Scotts in compliance with the Policy, but whether it sent the notice as mandated by the more specific statute, Section 379.118. The Scotts contest the certificate of mailing method utilized by Farm Bureau was not sent as required by law. As a result, they raise genuine issues of material fact precluding summary judgment regarding whether Farm Bureau's certificate of mailing was unlike the approved form 3665, which requires an address, or whether Farm Bureau's own form was actually approved according to the postal regulations. It is noteworthy Farm Bureau's representative, N.S., did not know the answer in his deposition. *See* 39 CFR § 111.1 and the Domestic Mail Manual section 503.5.1.7 referenced therein (discussing privately printed certificate of mailing forms must be reviewed and approved). Moreover, Farm Bureau's summary judgment motion states it was sent by "certified mail," which is not the same as "certificate of mailing" as the evidence presented in its Administrative Specialist's affidavit; thus, we find discrepancies between their own motion for summary judgment and their "uncontroverted" evidence.

The Scotts also allege the notice only raises a presumption that Farm Bureau intended the Policy would not be renewed, but additional facts rebut that presumption because Farm Bureau sent them new identification cards and declaration sheets, which show the Policy was renewed and in effect when the accident occurred. The Scotts rely on *Clear v. Missouri Coordinating*

---

[2] *See also U.S. Bank, N.A. v. Tennessee Farmers Mut. Ins. Co.*, 277 S.W.3d 381 (Tenn. 2009); *Benton v. Hanford*, 671 S.E.2d 31 (N.C. Ct. App. 2009) (where the language of an insurance policy conflicts with the provisions of the State Financial Responsibility Act, the provisions of the Act prevail); *Steffen v. Progressive Northern Ins. Co.*, 754 N.W.2d 730 (Neb. 2008) (where a statutory omnibus provision is in conflict with the provisions of an automobile insurance policy, the statute and not the policy provision is controlling).

*Board for Higher Education*, 23 S.W.3d 896, 900 (Mo. App. E.D. 2000), to support their argument. There, as in this appeal, Clear denied receiving notice prior to a garnishment pursuant to 20 U.S.C. 1095a(a)(2), which similarly required creditors to mail written notice to the debtor's last address thirty days before garnishment and to include certain information in the notice. *Id.* The court held:

> When proof of proper mailing is adduced, the presumption may be rebutted by evidence showing that the mailing was not received. Evidence of non-receipt does not nullify the presumption but leaves the question for the determination of the finder of fact under all the facts and circumstances of the case.

*Id.* (internal citation omitted). Thus, *Clear* demonstrates the importance of the Scotts' additional material facts which must be presented to a fact finder for its determination, precluding summary judgment.

Significantly, we find the notice of **cancellation** is treated differently than notice of **non-renewal** in Section 379.118.2:

> 2. Issuance of a notice of **cancellation** under subsection 1 of this section constitutes a present and unequivocal act of cancellation of the policy.

(Emphasis added).

Subsection 2 makes no reference to the notice of **non-renewal**. The legislature is presumed to have acted intentionally when it includes language in one section of a statute, but omits it from another. *Jantz v. Brewer*, 30 S.W.3d 915, 918 (Mo. App. S.D. 2000). "A disparate inclusion or exclusion of particular language in another section of the same act is 'powerful evidence' of legislative intent." *Id.* (internal citation omitted). Thus, the omission of the non-renewal language in this section demonstrates that additional facts may rebut the presumption to the insurance company's act or attempt not to renew the insured's policy.

We conclude the facts of the Scotts' non-receipt of the notice, to include the discrepancies with Farm Bureau's own summary judgment motion and supporting facts, with the Scotts' receipt of new identification cards and declarations sheets are material issues of fact which may also provide evidence for a fact finder to determine whether the notice of non-renewal was effective or even rescinded by Farm Bureau's own actions. The summary judgment record does not support a finding that Farm Bureau properly sent a notice of non-renewal based upon undisputed facts, which was not otherwise rebutted by its own actions, such that the Scotts had no coverage at the time of the accident.

The judgment of the trial court is reversed and the cause is remanded for additional proceedings. Our holding in point one is dispositive of this appeal; thus, we will not review point two.

## CONCLUSION

The trial court's judgment is reversed and remanded.

_____
Lisa P. Page, Presiding Judge

Rebeca Navarro-McKelvey, J., and
Virginia W. Lay, J., concur.

10