Bobby Roland ESTEP and Kathryn Estep, Respondents,

v.

Ray ATKINSON, Appellant.

No. 18869.

Missouri Court of Appeals, Southern District, Division Two.

Oct. 25, 1994.

■

Richard L. Schnake, Neale, Newman, Bradshaw & Freeman, Springfield, for appellant.

Leland C. Bussell, Richard L. Rollings, Jr., Bussell, O'Neal & Hall, Springfield, for respondents.

CROW, Judge.

Defendant, Ray Atkinson, appeals from an order denying his "Motion to Set Aside Default Judgment." His two points relied on present legal and factual issues. Discussing those issues requires an account of the undisputed facts.

Bobby Roland Estep ("Bobby") commenced the litigation May 10, 1990, by filing an affidavit in Associate Division Two of the Circuit Court of Douglas County. The affidavit stated, in substance: (a) Bobby owns a tract of land in that county, (b) in June, 1985, he agreed Defendant could live on the tract rent-free for one year with the option to buy it at year's end, (c) Defendant never endeavored to buy the tract, and (d) Bobby served notice April 5, 1990, on Defendant to vacate the tract within 31 days. The affidavit prayed for an order directing the sheriff to remove Defendant from the tract.

Defendant, by counsel, filed an answer May 22, 1990, generally denying Bobby's allegations. Defendant's answer was accompanied by a two-count counterclaim. Count I averred that Bobby sold Defendant the tract, that Defendant was ready, willing and able to comply with the terms of sale, and that Bobby failed to deliver an abstract and deed to Defendant. Count I prayed for specific performance. Count II pled that Defendant had improved the tract in reliance on Bobby's promises, and that returning the tract would unjustly enrich Bobby by $5,000, the value of the improvements. Count II prayed for judgment in that amount.

During the ensuing 15 months: (1) a lawyer entered an appearance for Bobby, (2) the case was continued by agreement, (3) a motion for change of judge was granted, (4) the case was reset for trial, (5) Bobby's original lawyer was replaced by lawyer John Bruffett, (6) the case was again continued, (7) the case was reset for trial, (8) Defendant's lawyer was granted leave to withdraw, and (9) the case—for reasons undisclosed by the record—was not tried as scheduled.

On September 4, 1991, Bobby moved to add Kathryn Estep as a plaintiff. The motion was granted. Bobby and Kathryn, henceforth referred to as "Plaintiffs," were granted leave to file an amended petition, which they did. The amended petition repeated, in substance, the allegations in the affidavit by which Bobby had commenced the suit. The amended petition prayed for recovery of the tract, $1,000 damages for "unlawfully withholding" it, and $35 per month rent beginning June, 1986.

The case was then transferred to the presiding judge of the circuit, and subsequently assigned to a special judge ("the trial court").

On February 13, 1992, lawyer Philip S. Huffman entered his appearance as counsel for Defendant.

The next day (February 14, 1992), the trial court set the case for trial April 10, 1992. The docket entry provided: "No further continuances. All responsive pleadings to be filed on or before February 25, 1992." We infer the trial court's reason for the latter order was that Bobby had filed no reply to Defendant's counterclaim, and Defendant had filed no answer to Plaintiffs' amended petition.

On the scheduled trial date, April 10, 1992, the trial court received a "faxed" motion for continuance from lawyer Huffman. The trial court granted the motion and reset trial for May 15, 1992.

The next documented activity occurred on July 27, 1992, when the circuit clerk sent a letter to the trial court. The letter stated Bobby had called the clerk, asking that the case be reset (the record does not explain why it was not tried May 15, 1992).

On September 15, 1992, the trial court set the case for trial November 13, 1992, and directed the circuit clerk to notify the parties and counsel.

On September 17, 1992, the circuit clerk sent a letter to: (a) Bobby, (b) Defendant, (c) lawyer Bruffett, and (d) lawyer Huffman. The letter stated the trial court had set the case for November 13, 1992, at 9:00 a.m. Huffman received the letter September 21, 1992.

Three days later, on September 24, 1992, Huffman sent a letter to the circuit clerk. The text of the letter was:

"Mr. Ray Atkinson has called our office and asked that the above named case be rescheduled. The case was to be heard at Friday, November 13, 1992 at 9:00. Mr. Atkinson will be out of town at that time."

The circuit clerk stamped the letter "filed" September 25, 1992.

On November 13, 1992, Plaintiffs and lawyer Bruffett appeared for trial. Neither Defendant nor lawyer Huffman appeared. The trial court announced:

"The case was set for trial today on September 15th, 1992. The parties were notified in writing by the Circuit Clerk on September 17. We've had some proceeding prior to going on the record regarding whether or not the case should be heard today since neither Mr. Huffman nor Mr. Atkinson is present.

Mr. Bruffett has conferred with his client. There is no motion for continuance in the file. There is a letter from Mr. Huffman in the file which indicates that he was aware of the setting today. And for record purposes, I'm not treating the letter from Mr. Huffman, dated September 24th, as a motion for a continuance. It doesn't, in any way, comply with the rules on continuances.

Plaintiffs have—I've advised them prior to going on the record that the Court was ready to proceed today, if they wished to proceed, we would. Otherwise, if they wished it continued, we would do it that way. And Plaintiffs have decided, after conferring with Mr. Bruffett, to proceed today."

Lawyer Bruffett thereupon made an opening statement, presented testimony by Bobby and by Defendant's ex-wife, and introduced photographs of the tract. After the evidence, Bruffett made a closing argument.

The trial court found Plaintiffs were entitled to the relief sought, and that Defendant's counterclaim should be denied. The court directed Bruffett to "prepare formal judgment for signature."

On December 2, 1992, the trial court signed a judgment consistent with its findings of November 13, 1992. The circuit clerk stamped the judgment "filed" December 3, 1992.

On February 18, 1993, lawyer Huffman, on behalf of Defendant, filed the motion referred to in the first sentence of this opinion. The motion averred Defendant was outside Missouri on November 13, 1992, and was unaware the case was being taken up by the court. The motion further pled that Huffman had been informed by court personnel that the case had been continued as a result of Huffman's letter of September 24, 1992 (quoted *supra*). Attached to the motion were "affidavits" of (1) Huffman, (2) his secretary, and (3) Defendant.[1]

The affidavits, in the aggregate, presented the narrative in the seven numbered paragraphs below.

1. Within a "day or two" after Huffman received notice of the November 13, 1992, setting, Defendant informed Huffman's secretary ("Brenda") that Defendant had a longstanding commitment to be outside Missouri that date. As a consequence, Huffman asked Brenda to try to obtain a new setting.

2. Brenda phoned the circuit clerk's office September 23, 1992, and told the lady who answered that Defendant was going to be out

---

1. The three documents were each captioned "Affidavit." The one signed by Huffman's secretary and the one signed by Defendant were acknowledged—but not sworn to—before a notary public. The one signed by Huffman was also unsworn, but made on his "oath as an officer of [the] court regarding this case." Having pointed this out, and solely for convenience, we shall refer to the documents as affidavits. Their evidentiary value is discussed *infra*.

of town November 13, 1992, hence she (Brenda) needed *to get the case rescheduled.* The lady told Brenda "it would not be a problem," and to write the court a letter explaining the situation. Brenda sent the letter of September 24, 1992.

3. On November 2, 1992, Defendant called Huffman's office to get the new date. Huffman asked Brenda whether she had gotten the case rescheduled. She said she had, and showed him the September 24, 1992, letter, but stated she had not received a new court date. At Huffman's request, Brenda called the lady to whom she had spoken September 23, 1992, *and was told it was* "on record" that she (Brenda) had called earlier because there was "a note attached to the file." The lady assured Brenda that "everything had already been taken care of, but that she did not know the new date."

4. Brenda then called the trial court's office. The lady who answered was familiar with the case. The lady got the judge's date book and went over some available dates. Following that conversation, Brenda informed Defendant the case was being rescheduled so he could go on his trip.

5. Brenda received no notice of the new date, so she phoned the trial court's office November 12, 1992, telling the lady who answered that she (Brenda) wanted to confirm "that the case was off for the 13th." Brenda explained to the lady that she did not want the judge to make an unnecessary trip to Douglas County.[2] The lady told Brenda the judge had other cases to be heard November 13, but confirmed the case was "off for the 13th."

6. Brenda also phoned lawyer Bruffett's office November 12, 1992. Her affidavit is unclear as to whether this was before or after phoning the trial court's office; however, telephone records appended to her affidavit indicate the call to Bruffett's office preceded the call to the trial court's office. Bruffett was gone when Brenda called. Brenda told Bruffett's secretary the case had been continued and they needed another court date. Bruffett's secretary could provide no dates, as Bruffett had his calendar.

7. Huffman assumed the trial court would reset the case when the court obtained Bruffett's available dates.

The affidavits also explained how and when Huffman and Defendant discovered the judgment had been entered. Inasmuch as those circumstances are irrelevant to the issues in this appeal, we need not recount them.

The trial court took up Defendant's motion to set aside the judgment April 30, 1993. The parties and their lawyers were present. No party presented evidence, thus the motion was "submitted on the written record in the file."

On May 3, 1993, the trial court signed a three-page order denying the motion. The order provided, in pertinent part:

"1. The judgment ... filed on December 3, 1992, was not a default judgment but rather a judgment on the merits. Defendant, who filed his answer on May 22, 1990, was not in default. Accordingly, the standards of Rule 74.05(c) do not apply, the title of defendant's motion notwithstanding.

2. The court takes up defendant's motion under the standards set out in Rule 74.06(b). Only part (1), involving excusable neglect, is applicable, since there is no claim of mistake, inadvertence, surprise, fraud, irregularity, satisfaction or that the judgment is void.

3. ... [In this paragraph, the order set forth the procedural history of the case, noting: "While this casual procedural approach is lamentable, it has nevertheless been the standard of practice applied in this case." The paragraph concludes: "The court was not advised of [Huffman's] letter [of September 24, 1992] and there is nothing in the file to indicate that plaintiffs or plaintiff's [sic] attorney were aware of the letter. No orders were made in response to this letter, and no continuance was granted."]

4. On the trial date, November 13, 1992, ... trial was held on the record in the absence of defendant and defendant's counsel.

2. The special judge assigned to this case is an associate circuit judge of Ozark County.

5. ...

6. [T]he rule authorizing relief from judgment because of excusable neglect does not require relief in the case of neglect, but rather authorizes it is [sic] the event that the neglect is excusable. Further, the court is to consider each case on its own merits. [Citation omitted.] In this regard the court considers the Motion and three supporting documents filed by defendant:

a. The document entitled Affidavit, signed by defendant Ray Atkinson, does not address the issue of excusable neglect, except as it refers to apparent conversations with counsel.

b. The document entitled Affidavit, signed by Brenda ... refers to apparent conversations with an unnamed clerk in the Associate Division of the Circuit Court of Ozark County. No statement or affidavit of any such clerk is before the court at this time. Additionally, this improbable series of phone calls does not convince the court that defendant would believe that the case had been taken off setting, as the statement would suggest. Finally, even under the loose procedures which have been followed in this case, the court would have had to have been involved in any continuance, and the court was not so involved.

c. The affidavit of Mr. Huffman suggests that 'the continuance was reconfirmed by the Circuit Clerk's office in Ava.' No statement or affidavit of anyone in the Circuit Clerk's office in Ava is before the court at this time. Additionally, the court did not take the case off setting or authorize anyone in the Circuit Clerk's office in Ava to take the case off setting, reschedule the case or inform anyone that any such thing had been done.

Now, having considered the file in the case, the written motion and supporting documents, and the findings set out above, the court finds that defendant is not enti-

tled to relief under Rule 74.06(b), and hereby orders that defendant's Motion to Set Aside Default Judgment be denied."

Defendant brings this appeal from the above order. His first point relied on asserts the trial court erroneously declared and applied the law "by finding that Rule 74.05(c) was inapplicable, in that [Defendant] was in fact in default, since he had filed no answer to [Plaintiffs'] amended petition."

Rule 74.05, Missouri Rules of Civil Procedure (1993),[3] read:

"(a) **Entry of Interlocutory Order of Default.** When a party against whom a judgment for affirmative relief is sought has failed to plead or otherwise defend as provided by these Rules, an interlocutory order of default may be entered against that party.

(b) **Assessment of Damages.** After entry of an interlocutory order of default, a default judgment may be entered.... If a jury is not demanded, the court may assess damages....

(c) **When Set Aside.** Upon motion stating facts constituting a meritorious defense and for good cause shown, ... a default judgment may be set aside.... Good cause includes a mistake or conduct that is not intentionally or recklessly designed to impede the judicial process. ..."

■ The reason Defendant seeks to persuade us that Rule 74.05 applies (instead of Rule 74.06, which the trial court applied) is found in *Cotleur v. Danziger*, 870 S.W.2d 234 (Mo. banc 1994). There, the Supreme Court of Missouri held the latter rule requires a higher standard for setting aside a judgment. *Id.* at 236[1]. The opinion declared, "... there is much greater liberality in reopening a judgment after a default than in reopening a judgment that comes after a hearing on the merits...." *Id.*

In *Cotleur*, a wife brought an action for dissolution of marriage. The husband filed

---

**3.** Rule 74.05 was amended effective January 1, 1994. Before then, it had remained unchanged since January 1, 1988. Rule 74.06, which is also pertinent to this appeal, has remained unchanged since January 1, 1988. Because the crucial procedural events in this case occurred in 1992 and 1993, all references to rules in this opinion are to Missouri Rules of Civil Procedure (1993).

an answer and cross-petition. The wife filed an answer to the cross-petition, and the parties participated in pretrial discovery. The wife's lawyer withdrew. She retained another lawyer, Kelly; however, he failed to enter his appearance. The husband's lawyer obtained a trial setting and, unaware Kelly was representing the wife, sent notice of the setting directly to her. She informed Kelly of the setting by phone. Neither she nor he appeared in court on the appointed date. The husband presented evidence, and a few days later the trial court entered a decree of dissolution. Thereafter, the wife moved to set the decree aside, contending it was a default judgment within the meaning of Rule 74.05.

The Supreme Court, by a four-to-three decision, held the decree was not a default judgment, but instead a judgment on the merits. *Id.* at 237[3]. Therefore, said the Court, Rule 74.06 governed the wife's motion to set the decree aside. *Id.*

Defendant maintains the instant case is different than *Cotleur* in that he filed no answer to Plaintiffs' amended petition "and thus was in default."

▮ Plaintiffs respond that this case was originally filed as a landlord's action to recover possession per § 535.020, RSMo 1986. Consequently, according to Plaintiffs, no answer was required of Defendant by reason of § 517.011.1(3), RSMo Cum.Supp.1989, § 517.031.2, RSMo Supp.1988, and Rule 41.01(b). Accordingly, say Plaintiffs, Defendant was not in default for failing to file an answer to Plaintiffs' amended petition, hence the hearing November 13, 1992, was a trial on the merits.

Not so, replies Defendant. He argues that the amended petition filed by Plaintiffs pled an action in ejectment, an action which Associate Division Two of the Circuit Court of Douglas County lacked jurisdiction to hear and determine. Consequently, says Defen-

dant, the case became "a circuit division case for the balance of the proceedings" and did not "retain its character as a case which originated before an associate circuit judge." As a result, asserts Defendant, Rule 55 became applicable, requiring him to file an answer to the amended petition. Defendant cites *Manor Square, Inc. v. Heartthrob of Kansas City, Inc.*, 854 S.W.2d 38, 41–42 (Mo. App.W.D.1993), in support of his hypothesis.

We need not decide whether Defendant's reliance on *Manor Square* is sound.

As reported earlier, when Plaintiffs and lawyer Bruffett appeared in the trial court November 13, 1992, they—and the trial court—proceeded with trial (albeit uncontested). Plaintiffs did not ask the trial court to enter an interlocutory order of default against Defendant per Rule 74.05(a), and the trial court did not do so. Plaintiffs presented their evidence on the merits and the trial court found in their favor.

From *Mahurin v. St. Luke's Hospital of Kansas City*, 809 S.W.2d 418, 421 [2, 3] (Mo. App.W.D.1991), we learn:

"... when an answer is required but not filed, if a cause is tried as if an answer had been filed, on appeal the matter is treated as if an answer traversing the allegations of the petition was filed. *Estate of Schubert v. Holleman*, 683 S.W.2d 324, 325 (Mo.App.1984). This is not to say that the filing of an answer is not required; it is to say that enforcement of the requirement of an answer is waived unless the opposing party invokes its enforcement by timely and proper action. *Id.* at 325–26."

▮ Here, Plaintiffs never claimed there was a default *nihil dicit*[4] because Defendant failed to answer their amended petition. Plaintiffs, their lawyer, and the trial court proceeded as though Defendant had answered. Applying *Mahurin*, we treat this appeal as if he had. Accordingly, we hold the trial court correctly applied the law in

---

4. As explained in *State ex rel. Webster v. Ames*, 791 S.W.2d 916, 917[2] n. 3 (Mo.App.S.D.1990), a default *nihil dicit* is a default for failure to file a responsive pleading within the time allowed after service of summons. *O'Connor v. Quiktrip Corp.*, 671 S.W.2d 17 (Mo.App.W.D.1984); *Smith v. Sayles*, 637 S.W.2d 714 (Mo.App.W.D.1982).

Such a default admits the traversable allegations of the petition as to the cause of action pled, in effect admitting injury to the plaintiff by the violation of a legally protected interest, but the default does not admit that damages resulted from that injury. *O'Connor*, 671 S.W.2d at 19[1]; *Smith*, 637 S.W.2d at 717.

ruling that Defendant's motion to set the judgment aside was not governed by Rule 74.05, but instead by Rule 74.06. That determination makes it unnecessary to consider the remainder of Defendant's first point, which is based on the premise that he demonstrated (1) good cause for failing to appear November 13, 1992, and (2) a meritorious defense to Plaintiffs' amended petition.

This brings us to Defendant's second point, which reads:

"Alternatively, the trial court abused its discretion in refusing to set aside the judgment under Rule 74.06(b), because the record demonstrates mistake as to the correct trial date and that any 'neglect' was excusable, in that

(a) [Defendant] and his attorney acted with due diligence to request an alternative trial date,

(b) they did so in conformity with, and in fact in a more precise manner than, the 'procedural approach' that the trial court found was, 'the standard of practice applied in this case,' and

(c) the uncontroverted affidavits of [Defendant], his attorney, and his attorney's secretary establish that [Defendant] and his attorney relied upon the repeated assurances of court personnel, both in the circuit clerk's office and trial judge's office, that the trial setting had been stricken and than [sic] an alternative trial date would be set."

Rule 74.06(b) read, in pertinent part:

"Excusable Neglect—Fraud—Irregular, Void, or Satisfied Judgment. On motion and upon such terms as are just, the court may relieve a party ... from a final judgment ... for the following reasons: (1) mistake ... or excusable neglect...."

■ Defendant's argument under his second point hinges on the assumption that the facts set forth in the three affidavits (the narrative in numbered paragraphs 1 through 7 earlier in this opinion) are true. However, the trial court's order, quoted in part *supra*, does not indicate the trial court found the facts to be as Defendant represented them.

Indeed, the trial court referred to some of the phone calls enumerated in Brenda's affidavit as an "improbable series of phone calls." Additionally, the trial court noted that the affidavit of lawyer Huffman was not supported by a statement or affidavit of anyone in the circuit clerk's office in Ava (county seat of Douglas County).

Rule 55.28 provides that when a motion is based on facts not appearing of record, the court may hear the matter on affidavits. However, Missouri appellate courts have held that, as in the case of oral evidence, the trial court is free to believe or disbelieve the statements made in such affidavits. *Restorative Services, Inc. v. Professional Care Centers, Inc.*, 793 S.W.2d 141, 144[2] (Mo.App. E.D.1990); *Flegel v. Holmes*, 614 S.W.2d 779, 780[3] (Mo.App.E.D.1981); *Cloyd v. Cloyd*, 564 S.W.2d 337, 343[10] (Mo.App.1978).

■ Here, the trial court's skepticism about the affidavits is evident in the trial court's order denying Defendant's motion. Such skepticism is understandable when one recalls, as noted earlier,[5] that the so-called affidavits signed by Brenda and Defendant were not sworn to by them. An affidavit is a declaration on oath, in writing, sworn to by a person before someone authorized to administer such oath. *Stenzel v. Department of Revenue*, 536 S.W.2d 163, 169[11] (Mo.App. 1976); *State ex rel. Nollmann v. Gunn*, 513 S.W.2d 710, 713[2] (Mo.App.1974). The documents signed by Brenda and Defendant were merely unsworn statements.

Assuming, arguendo, that the "affidavit" signed by Huffman on his oath as an officer of the court qualifies as an affidavit for the purpose of Rule 55.28, the trial court was not compelled to believe its contents. More importantly however, Huffman's affidavit demonstrated he had no firsthand knowledge of what the court personnel allegedly told Brenda.

We therefore have a record with, at best, one affidavit, and it, in turn, is based primarily on hearsay. Consequently, virtually nothing was established by affidavit in support of Defendant's motion to set the judgment aside.

5. Footnote 1, *supra*.

Rule 74.06(b) permits, but does not require, Missouri courts to set aside a final judgment where a party is able to show excusable neglect. *Cotleur,* 870 S.W.2d at 238. Missouri trial courts have broad discretion in deciding whether to grant a motion to set aside a final judgment. *Id.* Where a trial court denies a motion to set aside a judgment per Rule 74.06, an appellate court should not interfere unless the record convincingly demonstrates an abuse of discretion. *Burris v. Terminal Railroad Ass'n,* 835 S.W.2d 535, 537–38[2] (Mo.App.E.D. 1992); *In re Marriage of Clark,* 813 S.W.2d 123, 125[1] (Mo.App.S.D.1991).

The Supreme Court of Missouri has defined abuse of judicial discretion as an "untenable judicial act that defies reason and works an injustice." *Moore v. Board of Education of Fulton Public School No. 58,* 836 S.W.2d 943, 948[10] (Mo. banc 1992), *cert. denied,* —— U.S. ——, 113 S.Ct. 1270, 122 L.Ed.2d 666 (1993). Said another way, judicial discretion is abused when a trial court's ruling is clearly against the logic of the circumstances then before it and is so arbitrary and unreasonable as to shock the sense of justice and indicate a lack of careful consideration. *Shirrell v. Missouri Edison Co.,* 535 S.W.2d 446, 448[2] (Mo. banc 1976). If reasonable persons can differ about the propriety of the trial court's action, it cannot be said that the trial court abused its discretion. *Id.*

As the trial court pointed out in its order, Defendant could have buttressed his motion by affidavits or testimony from the court personnel Brenda said she called. Defendant chose not to do so, and submitted his motion on, at best, one affidavit—Huffman's.

Considering (a) the paucity of fact established by Huffman's affidavit, and (b) Huffman's failure to send lawyer Bruffett a copy of the September 24, 1992, letter requesting that the case be rescheduled, we cannot convict the trial court of abusing its discretion in refusing to set the judgment aside. We wistfully add that the present predicament could easily have been avoided had Huffman obtained Bruffett's consent to continue the case by agreement (assuming the trial court would have acquiesced), or had Huffman filed an application for continuance per Rule 65.03.

Although Defendant, in allegedly relying on Huffman's advice that the case would be rescheduled, may not have been neglectful himself, any procedural neglect by Huffman is imputed to Defendant. *Cotleur,* 870 S.W.2d at 238[5].

We need not, and do not, decide what the outcome of this appeal would have been if the "affidavits" of Brenda and Defendant had in fact been affidavits, and had the narrative appearing in them been confirmed by affidavits or testimony from court personnel. Confining our review to the record presented to the trial court, we hold that court did not abuse its discretion in denying Defendant's motion to set the judgment aside.

The order appealed from is affirmed.

PREWITT and PARRISH, JJ., concur.