**Douglas WEIDNER, D.P.M., and Suzanne Weidner, Plaintiffs–Appellants,**

v.

**Sharon M. ANDERSON, D.P.M., Defendant–Respondent.**

**Nos. 26763, 26854.**

Missouri Court of Appeals, Southern District, Division Two.

Sept. 30, 2005.

Motion for Rehearing and Transfer Denied Oct. 21, 2005.

Application for Transfer Denied Nov. 22, 2005.

Tyce S. Smith, Conway L. Hawn, Smith & Turley, Waynesville, for appellants.

William E. Hickle, Hickle Law Firm, Rolla, for respondent.

KENNETH W. SHRUM, Presiding Judge.

Douglas Weidner and Suzanne Weidner ("Plaintiffs") and Sharon M. Anderson ("Defendant") signed a contract under which Defendant was to initially operate Plaintiffs' podiatry clinic and ultimately become the owner thereof. After Plaintiffs sued Defendant for breach of contract and injunctive relief, Defendant responded with a four-count counterclaim. In it, Defendant sought damages for breach of contract, misrepresentation, libel, and slander.

A scheduled trial of Defendant's counterclaims was held without Plaintiffs being present. After learning of the judgment entry, Plaintiffs filed multiple motions seeking an order setting aside the judgment favorable to Defendant on two of her counterclaims.

Ultimately, all of Plaintiffs' motions to vacate the judgment were overruled and their suit was dismissed, with prejudice, for failure to prosecute. Plaintiffs' appeal raises five points of trial court error. Generally, the five claims traverse two main topics: (1) alleged trial court error for not vacating the judgment on Defendant's counterclaims; and (2) alleged insufficiency of the evidence to support the counterclaim judgment. In part, Plaintiffs' claims of trial court error have merit. Defendant failed to prove entitlement to the full amount of damages awarded on her breach of contract count. Moreover, there was insufficient evidence to support an award of damages to Defendant on her libel count. Accordingly, we amend the judgment related to the contract count by reducing the damage award. We reverse the judgment favorable to Defendant on Count II and remand. In all other respects, we affirm.

In August 1997, Plaintiffs and Defendant agreed via written contract that Defendant would operate Plaintiffs' podiatry clinic for two years. Moreover, Defendant was given an option to buy the clinic and business for $280,000. While operating the clinic for Plaintiffs, Defendant was to be paid for her services as follows: $5,000 per month for the first three months under the contract and after that, Defendant was to have all "net revenues" of the business.[1] The parties operated under this contact for approximately ten months during which time Defendant received $50,000, i.e., $5,000 per month. In May 1998, Plaintiffs notified Defendant that "[e]ffective immediately, we are ... terminating you with cause under the TOMS agreement dated August 26, 1997."

On June 2, 1998, Plaintiffs sued Defendant, alleging she had breached the contract in multiple respects. They also

---

1. "Net revenues" were defined in the contract as "Gross Revenues less Entrepreneur and Medical Mavin Ltd. Fees and Overhead expenses." The term "Entrepreneur fee" was a defined phrase and was a prescribed amount Defendant was to pay Plaintiff during the two-year period she operated the business. The "Medical Mavin Ltd." fee was an amount to be paid to the broker who arranged the deal between Plaintiffs and Defendant. The phrase "Overhead expenses" was also defined in the contract.

sought injunctive relief based on several theories, including an allegation that she had started her own clinic in violation of non-compete provisions in the contract.

On June 24, 1998, Plaintiffs fired their attorney, Matthew Clement ("Clement"). That same day, Clement notified Defendant's lawyer, Roger Carnahan ("Carnahan"), that he no longer represented Plaintiffs. Clement moved to withdraw as Plaintiffs' lawyer. This motion was filed with the circuit clerk on June 29, 1998. Clement then wrote Carnahan on July 3, 1998, again advising he no longer represented Plaintiffs and that any future communications should be sent directly to them.

Despite the foregoing, Carnahan faxed Defendant's answer and four-count counterclaim to Clement on July 6, 1998. Clement then called up his motion to withdraw as Plaintiffs' lawyer on July 9, 1998, and the court sustained the motion that day.

On August 26, 1998, Carnahan filed a notice with the circuit clerk that recited he intended to "call up [Defendant's counterclaims] for hearing and disposition" on September 24, 1998.[2] This notice contained a "Certificate of Service" in which Carnahan certified that on August 25, 1998, "a true and correct copy" of such notice was "deposited in the United States Mail, first class postage thereon prepaid, addressed to: Douglas and Suzanne Weidner, HCR 71, Box 750–5 Camdenton, MO. 65020."

When Defendant appeared on September 24, 1998, Plaintiffs were not in court. Even so, Carnahan opted to present Defendant's testimony and other evidence on Defendant's breach of contract count and her libel claim. Thereon, the court entered judgment against Plaintiffs on these counts for $425,560 and $137,500, respectively.

On November 3, 1998, Plaintiffs moved to set aside what they characterized as a "default judgment." This motion cited Rule 74.05 as authority for vacating the judgment. The essence of their unverified motion was that (1) they did not know Defendant had filed an answer and four-count counterclaim; (2) they had no notice that a hearing on Defendant's counterclaim was to be held September 24, 1998; and (3) they had meritorious defenses to the counterclaims.

Accompanying the motion was an affidavit from their former lawyer, Clement, in which he acknowledged receiving a "faxed" copy of the answer and counterclaim filed by Defendant. Clement's affidavit continued with this: "I was on vacation from July 6, 1998 through July 17, 1998. There is no record that this document was ever sent to Dr. and Mrs. Weidner by me or anyone at my office."[3]

By the end of September 1999, the trial court had overruled Plaintiffs' two motions to set aside the judgment. For the next four years, the case lay virtually inactive. In February 2004, Defendant filed a motion to revive her judgment. This led to a spate of new filings in the case. Included were new motions by Plaintiffs asking that the judgment against them be vacated. Plaintiffs alleged various grounds for such relief, but the court refused to vacate the

---

**2.** The record is silent on why Defendant limited her notice of hearing to her counterclaims, rather than calling up the entire case for trial.

**3.** Plaintiffs filed a second motion to vacate in March 1999. It focused exclusively on a claim that an indispensable party had not been joined; consequently, vacation of the judgment was mandated. Relief on that ground was denied in September 1999 and that denial is not raised as a claim of error on appeal.

judgment. Thereon, Defendant dismissed her misrepresentation and slander counts, the trial court dismissed Plaintiffs' suit against Defendant for failure to prosecute (with prejudice), and this appeal by Plaintiffs followed.

### POINT I: Alleged Void Judgment On Defendant's Counterclaims

Plaintiffs' first point maintains the money judgment against them was void because Plaintiffs were never served with the counterclaims and were never notified that a hearing on the counterclaims was scheduled for September 24, 1998; consequently, the trial court erred when it would not set aside the judgment per Plaintiffs' request.

■ Rule 74.06(b)(4) empowers a trial court to set aside a final judgment if the movant shows that the judgment is void. In part, a "void judgment" is one rendered in a manner inconsistent with due process. *Baxi v. United Technologies Automotive*, 122 S.W.3d 92, 96[7] (Mo.App.2003).

It has been held that a judgment may be void if rendered without compliance with the service requirements of Rule 43.01. *Am. Econ. Ins. Co. v. Powell*, 134 S.W.3d 743, 746[1] (Mo.App.2004). This follows because failure to give adequate notice violates the due process rights of the one entitled to notice. *Cody v. Old Republic Title Co.*, 156 S.W.3d 782, 784 (Mo.App. 2004); *Powell*, 134 S.W.3d at 746–47[3].[4]

Here, Plaintiffs' motion to vacate judgment alleged (1) that Clement never sent them a copy of the answer and counterclaims and (2) they were never given notice of the hearing on the counterclaims. They argue, therefore, that the judgement

was void and the court erred when it refused to set it aside. There is, however, a fatal evidentiary flaw in Plaintiffs' claim.

■ Specifically, Plaintiffs' motion to set aside the judgment was unverified. A Rule 74.06(b) motion to set aside a judgment does not prove itself, any more than does any other unverified motion or pleading. *Johnson v. Brown*, 154 S.W.3d 448, 451[3] (Mo.App.2005). *See also Snelling v. Reliance Auto. Inc.*, 144 S.W.3d 915, 918 (Mo.App.2004) (holding a Rule 74.05 motion to set aside does not prove itself). " 'If the [Rule 74.06(b) ] motion contains sufficient allegations of fact for its support, the motion thus must be verified, or supported by affidavits or sworn testimony produced at the hearing on the motion.' " *Dallas–Johnson Properties, Inc. v. Hubbard*, 823 S.W.2d 5, 6 (Mo.App.1991) (citation omitted).

In this case, the court had personal jurisdiction over Plaintiffs when Defendant filed her counterclaims. This occurred when Plaintiffs initially sued Defendant. Consequently, the issue is not the validity of a summons or service of summons, but whether the record supports the trial court's implicit finding that Plaintiffs either knew about the counterclaims and the September 24, 1998, hearing, or they were chargeable with knowledge of their existence.

Plaintiffs assert that their motion to vacate the judgment alleged facts, which if proven, supported a finding that the judgment was void. The problem for Plaintiffs, however, is that they never presented any admissible evidence by which they denied receiving a copy of the answer and counterclaims before the subject judgment

---

**4.** In pertinent part, Rule 43.01(a) requires that "[e]very pleading, subsequent to the original petition, every written motion ... and every written notice ... shall be served upon each of the parties affected thereby, but no service need be made on parties in default...." Subsections (b)-(g) of Rule 43.01 prescribe, *inter alia*, how service is to be made and how shown.

was entered. Nor did they offer sworn evidence in which they denied having knowledge that counterclaims had been filed in the suit. Inexplicably, the only evidence on this issue was Clement's affidavit in which he swore that (a) he received the answer and counterclaims, and (2) he had no office record to show those pleadings were forwarded to Plaintiffs. This is not evidence—even if believed— that inexorably compels the conclusion that Plaintiffs never had a copy of the counterclaims during the pre-judgment period, nor does it compel a finding that they never knew about the counterclaims before entry of the judgment. If Plaintiffs were wholly unaware that counterclaims had been filed, why not say so under oath? Why not support their claim of voidness of judgment with competent evidence?

■ There was, on the other hand, a document in the record from which the trial judge could presume Plaintiffs knew about the counterclaims and knew of the September 24, 1998, hearing on those claims. This is found in the August 25, 1998, notice filed by Defendant in which she called up her counterclaims. It contained a certificate of service in which Carnahan certified he mailed a copy of the notice to Plaintiffs at HCR 71, Box 750–5 Camdenton, MO. 65020. Mailing notices and copies of pleadings to litigants who are unrepresented by a lawyer is an authorized method by which service can be obtained on such litigants. Rule 43.01(c)(2); *Zurheide–Hermann, Inc. v. London Square Dev. Corp.*, 504 S.W.2d 161, 165[2] (Mo.1973). "In the absence of evidence to the contrary there is a rebuttable presumption that a written certificate by counsel making service that papers have been mailed to named parties at an address certain speaks the truth, i.e., that the papers were mailed to the parties named, at the address given, and that the attorney entertained the belief in good faith that the address was in fact the proper address of the parties named." *Id.* at 165[4].

■ Moreover, there is a presumption that a document duly mailed has been received by the addressee. *Clear v. Mo. Coordinating Bd. for Higher Educ.*, 23 S.W.3d 896, 900[6] (Mo.App.2000). *See* Rule 43.01(c) (provides that service by mail is complete upon mailing). When, as here, there is a presumption that the pleadings were duly mailed to what Carnahan believed was in fact the proper address, such presumption could be rebutted by evidence that (a) the mailing was not received by Plaintiffs, or (b) that it was not Plaintiffs' correct address. *Clear*, 23 S.W.3d at 900[7]. Had such evidence been presented, the presumption would not have been nullified, but the question would then have been left for determination of the finder of fact under all the facts and circumstances of the case. *Id.* at 900[8].

■ Here, Plaintiffs never challenged the presumption raised by Carnahan's August 26, 1998, certificate of service that they received his notice about the counterclaims. Specifically, they presented no evidence of non-receipt of the notice and no evidence that the address on Carnahan's certificate of service was not a proper address for them. Their counsel's bare statement to that effect, as contained in the motion to vacate judgment, was not proof that supported their allegation of lack of knowledge about the counterclaims. *Zurheide–Hermann*, 504 S.W.2d at 165. Consequently, they are deemed to have received the notice shortly after August 26, 1998.

■ Thus, assuming *arguendo*, that Plaintiffs never received copies of the answer and counterclaims before September 24, 1998, they had nearly a month's ad-

vance notice (via Carnahan's certificate of service) that a hearing on the counter-claims would be held September 24, 1998. This was adequate to meet the requirements of due process, in that informing Plaintiffs that counterclaims would be heard on September 24, 1998, put them on notice that a response to their petition had been filed and that counterclaims existed, or at a minimum, provided them with cause to make inquiry about what was going on. "Notice is regarded in law as actual where the person either knows of the fact's existence or is conscious of having the means of knowing it, even though such means may not be used." *Walkenhorst–Newman v. Montgomery Elevator*, 37 S.W.3d 283, 286[6] (Mo.App.2000). "Whatever fairly is sufficient to put an ordinarily prudent person on inquiry constitutes notice to him of such facts as would be discovered by reasonable pursuit and proper inquiry." *Lamke v. Lynn*, 680 S.W.2d 285, 286 (Mo.App.1984).

■ Because Plaintiffs apparently ignored the notice given them of the September 24 hearing, this point must fail. They should have made inquiry with the court to ascertain what was filed. They apparently chose to do nothing. Due to their own willful ignorance or neglect, the judgment was entered in their absence. We find that the judgment was not void for lack of notice. Point I is denied.

### Point II: Failure to Set Aside the Judgment under Rule 74.05

Plaintiffs' second point maintains the court should have set aside the judgment under Rule 74.05(d). Plaintiffs argue that their motion met all of the requirements of that rule, i.e., it was made within a reasonable time, it demonstrated good cause, and it set forth meritorious defenses. This argument lacks merit because Rule 74.05 only attends when the judgment entered was a "default judgment." As explained below, this was not a "default judgment" as contemplated by Rule 74.05. Rather, it was a judgment on the merits; as such, Rule 74.06 was the appropriate rule that should have been used in seeking to vacate this judgment.

■ Ordinarily, a judgment is said to be a "default judgment" within the meaning of Rule 74.05 if it results solely from the failure of a party to answer a pleading or otherwise defend, i.e., a judgment *nihil dicit*. *Crowe v. Clairday*, 893 S.W.2d 400, 403 (Mo.App.1995); *Estep v. Atkinson*, 886 S.W.2d 668, 673 n. 4 (Mo.App.1994). In contrast, a judgment on the merits is often said to be one that results when a party had participated in the litigation by filing pleadings, but failed to show up for trial. *Cotleur v. Danziger*, 870 S.W.2d 234, 236–37 (Mo.banc 1994). To set aside a "judgment on the merits," the proper standard is found in Rule 74.06, not Rule 74.05. *Estep v. Atkinson*, 886 S.W.2d at 672–74.

■ If these general rules always governed without exception, then Plaintiffs could use Rule 74.05 in their attempt to vacate this judgment. However, the *Estep* case teaches that in deciding which rule governs, i.e., Rule 74.05 or Rule 74.06, the inquiry is often fact driven.

In *Estep*, the plaintiff appeared for a trial on November 13, 1992, as scheduled. The defendant had not filed an answer to plaintiff's amended petition as of that date, despite the court's order of February 14, 1992, that "[a]ll responsive pleadings were to be filed on or before February 25, 1992." *Id.* at 669. Neither the defendant nor his lawyer appeared on the trial date. Thereon, the court heard evidence and entered judgment favorable to plaintiff on his claims and on the defendant's counterclaims. *Id.* at 670. After learning of the judgment, the defendant moved for its va-

cation. *Id.* In refusing to vacate the judgment, the trial court found, *inter alia*, that its judgment was not a default judgment, but was a judgment on the merits. *Id.* at 671. With that finding made, the court concluded the defendant had not proven himself entitled to have the judgment set aside under the more stringent standards of Rule 74.06(b). *Id.* This court affirmed the trial court's order, reasoning as follows:

"As reported earlier, when Plaintiffs and lawyer Bruffett appeared in the trial court November 12, 1992, they—and the trial court—proceeded with trial (albeit uncontested). Plaintiffs did not ask the trial court to enter an interlocutory order of default against Defendant per Rule 74.05(a), and the trial court did not do so. Plaintiffs presented their evidence on the merits and the trial court found in their favor."

"From *Mahurin v. St. Luke's Hospital of Kansas City*, 809 S.W.2d 418, 421[2, 3] (Mo.App. W.D.1991), we learn:

'when an answer is required but not filed, when a cause is tried as if an answer had been filed, on appeal the matter is treated as if an answer traversing the allegations of the petition was filed. *Estate of Schubert v. Holleman*, 683 S.W.2d 324, 325 (Mo. App.1984). This is not to say that the filing of an answer is not required; it is to say that enforcement of the requirement of an answer is waived unless the opposing party invokes its enforcement by timely and proper action. *Id.* at 325–26.'

"Here, Plaintiffs never claimed there was a default *nihil dicit* because Defendant failed to answer their amended petition. Plaintiffs, their lawyer, and the trial court proceeded as though Defendant had answered. Applying *Mahurin*, we treat this appeal as if he had. Ac-

cordingly, we hold that the trial court correctly applied the law in ruling that Defendant's motion to set the judgment aside was not governed by Rule 74.05, but instead by Rule 74.06."

*Id.* at 673–74.

The circumstances in *Estep* are sufficiently akin to those here to make the *Estep* analysis dispositive. Specifically, Defendant, her lawyer, and the trial court proceeded on September 24, 1998, as though Plaintiffs had answered the counterclaims. Defendant did not ask the trial court to enter an interlocutory order of default against Plaintiffs per Rule 74.05(a), and the trial court did not do so. Instead, Defendant presented her evidence on the merits and the trial court found in her favor. Relying on *Estep*, we hold that Plaintiffs chose the wrong remedy when they relied exclusively on Rule 74.05; that on the facts of this case, the only available choice for Plaintiffs was to seek vacation of the judgment per Rule 74.06.

Since Plaintiffs used the incorrect standard to support their argument, their second point must be denied. "Failure to specifically rely on a rule is sufficient to deny [Plaintiffs] any benefits of that rule." *Downing v. Howe*, 60 S.W.3d 646, 651 (Mo.App.2001).

■ Assuming *arguendo* that *Estep* does not govern and that Plaintiffs properly invoked Rule 74.05 as their remedy, they still have a fatal evidentiary deficiency in their case, i.e., they did not support their Rule 74.05 allegations by verifying their motion, or by sworn affidavit, or by sworn testimony produced at a hearing in support of their motion. *See, e.g. Snelling v. Roy's Trans.*, 144 S.W.3d 919, 920[3] (Mo.App.2004). The party moving to set aside a default judgment per Rule 74.05(d) has the burden of proof to convince the court that the party is entitled to relief. *Hinton v. Proctor & Schwartz*, 99 S.W.3d

454, 458[3] (Mo.App.2003). As found in Point I, Plaintiffs offered no evidence to overcome the presumption that they received notice that a hearing was to be held on Defendant's counterclaims. They chose to ignore the notice, i.e., they failed to contact an attorney to represent them at the hearing and they failed to attend the hearing. This intentional disregard of the notice prevents a showing of good cause under Rule 74.05. *See Great S. Sav. & Loan Ass'n v. Wilburn*, 887 S.W.2d 581, 584 (Mo.banc 1994); *Gering v. Walcott*, 975 S.W.2d 496, 499 (Mo.App.1998).

Because Plaintiffs presented no evidence to support their claims and because their bare assertions via unverified motion were not sufficient, the trial court did not err in denying Plaintiffs' Rule 74.05(d) motion. Point denied.[5]

### Point IV: Failure to Set Aside Judgment for Lack of Jurisdiction

Plaintiffs' fourth point maintains that the trial court lacked subject matter jurisdiction on the breach of contract counterclaim. They cite *Scher v. Sindel*, 837 S.W.2d 350, 354 (Mo.App.1992), for the proposition that a litigant must plead the necessary element of "performance" to state a cause of action for breach of contract. Plaintiffs insist, therefore, that Defendant's breach of contract count "failed to state a claim upon which relief could be granted by failing to plead the performance of her obligations under the subject contract."

█ In analyzing this claim, we start by recounting the following general principles of law. When deciding if a pleading fails to state a claim, we accept as true all facts properly pleaded *and all reasonable inferences drawn therefrom. Madden v. C & K Barbecue Carryout, Inc.*, 758 S.W.2d 59, 61 (Mo.banc 1988). A pleading sufficiently states a cause of action if the averments of the pleading, accorded every reasonable and favorable intendment, invoke principles of substantive law that may entitle the pleader to relief. *Villines v. Mier*, 58 S.W.3d 921, 923[2] (Mo.App.2001). When a challenge to a pleading for failure to state a claim is brought for the first time on appeal, the pleading will be more liberally construed than if the challenge was made via a motion to dismiss. *Baugher v. Gamble Const. Co.*, 324 Mo. 1233, 26 S.W.2d 946, 949 (1930); *Schell v. Keirsey*, 674 S.W.2d 268, 273[7] (Mo.App.1984).

█ In this case, Plaintiffs' fourth point must fail for a variety of reasons. Initially, we note that Plaintiffs first raised this alleged deficiency over five years after the judgment was entered. As such, the following is apropos:

"These arguments come too late. While the sufficiency of a petition to state a claim may be raised at any stage of the proceedings and even for the first time on appeal a petition will be found sufficient after verdict '(i)f, after allowing all

---

**5.** In their reply brief, Plaintiffs argue—for the first time—that the trial court should have invoked Rule 75.01 to set aside the judgment. Their premise is the trial court retained control over the counterclaim judgment until thirty days after January 14, 2005, the date that Defendant finally dismissed the remaining two counts of her counterclaim; consequently, the trial court abused its discretion by not finding there was "good cause" to set aside the judgment. Multiple problems attend this argument. First, it is one Plaintiffs have wholly waived in that (a) they never presented that argument to the trial judge, (b) they never made that argument as a point on appeal, and (c) they never advanced that argument in their opening brief. Moreover, such argument fails because what might have been "good cause" under Rule 75.01, i.e., Plaintiffs' alleged lack of notice of the counterclaims and lack of notice of the September 24, 1998, trial setting, was not supported by any evidence.

reasonable inferences and matters necessarily implied from the facts stated, there is sufficient [sic] to advise defendant with reasonable certainty as to the cause of action it is called upon to meet and bar another action for the same subject matter.' Cognately, a petition which only imperfectly pleads a claim but which is amendable to a proper statement of that claim without changing the cause of action will be held good after verdict."

*Barber v. Allright Kansas City, Inc.,* 472 S.W.2d 42, 44 (Mo.App.1971) (citations omitted).

Consequently, upon a liberal construction of Defendant's counterclaim, we find it is broad enough to include an allegation of partial performance. Therein, Defendant alleged a contract existed between Plaintiffs and herself with a variety of obligations imposed upon each party. She claimed that Plaintiffs breached the contract and caused her damage. The only reasonable inference to be accorded these allegations is that Defendant did not breach the contract and performed her duties thereunder. Otherwise, she would be entitled to no relief. Any other reading of these allegations would be unduly strained.

Second, we find that Defendant's partial performance of the contract was not an issue here. Via their own petition, Plaintiffs admitted that Defendant began "servicing the patients of plaintiffs and the nursing home contracts." The only pertinent allegations of Defendant's breach were that she failed to pay Plaintiffs certain portions of the profits, she failed to deposit all of the receipts, and she wrote checks in violation of the contract. She performed services under the contract for ten months before Plaintiffs terminated the agreement.

Although not dispositive of the issue, the following statement weighs heavily against Plaintiffs' contentions in this point: "Where a party admits to a material fact, relevant to an issue in a case, the same is competent against him as substantive evidence of the fact admitted and is entitled to considerable weight." *Mitchell Eng., Div. of CECO v. Summit Realty,* 647 S.W.2d 130, 141[10] (Mo.App.1982). In belatedly arguing that Defendant failed to plead partial performance under the contract, Plaintiffs simply ignore what the record shows, that Plaintiffs admitted Defendant partially performed.

Finally, even accepting the case Plaintiffs cite (*Scher*), we note the origins of that rule date to *State ex rel. Fletcher v. Blair,* 352 Mo. 476, 178 S.W.2d 322 (1944). In explaining the necessity to plead performance, the *Fletcher* court noted that a petition is not fatally defective for failing to allege full performance or an offer to perform if the pleader alleges prevention of performance by the other party. *Id.* at 324[5]. Defendant did exactly that here; consequently, the *Scher* rule is not implicated. For these reasons, Plaintiffs' fourth point is denied.

### Point V: Sufficiency of the Evidence to Support the Counterclaims

Plaintiffs' fifth point urges reversal by claiming the trial court lacked *subject matter jurisdiction* to enter the judgment because the damages awarded were neither pled nor proven. Plaintiffs continue by asserting that the *evidence was insufficient* to prove any damages for either the breach of contract count or the libel count. We address their contentions as we best understand them.

First, Plaintiffs argue that Defendant did not properly plead damages for her breach of contract claim. They direct our attention to the Rule 55.05 requirement that, except for tort suits seeking money

damages, "[i]f a recovery of money be demanded, the amount shall be stated." Plaintiffs point out that Defendant's request for damages set forth no specific amount. They then argue that "since [Defendant] effectively plead no damages for breach of contract in her counterclaim, the trial court's award of any damages exceeded its subject matter jurisdiction." Finally, Plaintiffs cite case law that, in *default* proceedings, a trial court has no subject matter jurisdiction to enter a damage award in amounts greater than that pled.

This argument fails because, as we have already found, this is not a default proceeding. The rule limiting the amount that can be awarded in a default case to that specifically requested "is designed to prevent a plaintiff from taking advantage of a defendant, even one who has ignored a summons." *Jew v. Home Depot USA, Inc.*, 126 S.W.3d 394, 398[11] (Mo.App. 2004). The rule is one of notice to an opposing party. *Id.* at 398[12]. The theory underlying the rule is that the defendant is presumed to be willing to have the plaintiff granted the relief stated in the petition, but no intendment or presumption can be made that the defendant is willing to authorize more. *Id.* at 398. The same considerations simply do not apply here.

■ In our case, Plaintiffs knew Defendant was proceeding under the contract and knew the general amount of damages sustainable under that contract. The requirement under Rule 55.05 that the amount of damages must be specifically stated is a procedural requirement. *Stewart v. Sturms*, 784 S.W.2d 257, 261–62 (Mo.App.1989). When Plaintiffs failed to challenge this requirement, they waived the procedural defect. We reject the notion that failure to allege a specific amount

of damages deprived this trial court of subject matter jurisdiction.[6] This prong of Plaintiffs' point is denied.

■ Next, we consider Plaintiffs' contention that the evidence was insufficient to support the judgment on the libel count. The evidence presented by Defendant on this matter is scant at best, even when charitably viewed. At the trial, Defendant testified that Dr. Weidner sent a letter to the county health department stating that Defendant currently was unlicensed to practice podiatry. This statement, of course, was false. However, Defendant never testified that this letter damaged her reputation in any way. Instead, Defendant testified as follows:

"Q: Do you *believe* similar letters were sent to other nursing homes and doctors and people in the area?

"A: Yes, I do.

"Q: As a result of these false statements, have you been damaged?

"A: Yes, I have.

"Q: In what way?

"A: I have nursing home administrators that will not come to the phone to talk to me. They will not return phone calls. I have had doctors that don't return calls, that are no longer referring patients." (Emphasis supplied.)

After this, Defendant said it would cost her $37,500 to repair the damage done to her reputation. She testified that $37,500 was the amount it would cost to do a "marketing action plan" for three years. This was the total of her evidence.

We find this patently insufficient to prove libel. "[P]roof of actual reputational harm is an absolute prerequisite in a defamation action." *Kenney v. Wal–Mart*

6. This is not to say that such a defect would survive a motion to dismiss or a motion for more definite statement.

*Stores, Inc.,* 100 S.W.3d 809, 817 (Mo.banc 2003). There must be concrete proof that a person's reputation has been injured. *Id.* at 816. The *Kenney* court held:

> "One form of proof is that an existing relationship has been seriously disrupted, reflecting the idea that a reputation may be valued in terms of relationships with others. Testimony of third parties as to a diminished reputation will also suffice to prove 'actual injury.' *Awards based on a plaintiff's testimony alone or on 'inferred' damages are unacceptable.*"

*Id.* (quoting *Rocci v. MacDonald–Cartier,* 323 N.J.Super. 18, 731 A.2d 1205, 1208 (1999)).

In the record, we find no such "concrete" proof of injury. Defendant claimed that Dr. Weidner made a defamatory statement to the county health department. However, no damage resulted from this letter, i.e., there is no evidence of the effects of the letter to the health department.

In apparent attempts to show actual injury, Defendant testified that she "believe[d]" other similar letters were sent to other doctors and nursing homes. However, Defendant's "belief" testimony, presented as it was without explanation or foundation, was nothing but pure speculation and did not provide the kind of concrete proof required to support a claim for damages in a libel suit. Nor was this deficiency cured by Defendant's testimony that other doctors and nursing homes "will not return [her] phone calls." This follows because Defendant never identified who she "believed" may have gotten these letters, nor did she identify who refused to return her calls; consequently, there was a total failure of proof that the letters—if sent to other persons as Defendant "believed"—caused her calls to be unreturned or caused her to lose business. To view Defendant's evidence as sufficient would require acceptance of speculation heaped upon speculation. This we will not do. In sum, Defendant's speculative evidence is entirely insufficient to meet the dictates enunciated by the Missouri Supreme Court in *Kenney.* Consequently, that part of the judgment awarding Defendant $137,500 for libel is reversed and remanded.[7] *Commerce Bank, NA v. Blasdel,* 141 S.W.3d 434, 458[34, 35] (Mo.App.2004).

The final argument under Point V is Plaintiffs' claim that the evidence is insufficient to support the amount of damages for breach of contract. Plaintiffs are partially correct.

It is axiomatic that "[d]amages are an essential element of a cause of action for breach of contract and must be proven." *Rice v. West End Motors, Co.,* 905 S.W.2d 541, 542 (Mo.App.1995). Here, Defendant testified that she earned $5000 per month for ten months of the two-year contract. She further testified that, based on her projections, she should have made $311,115 had the Plaintiffs not breached the contract for a period of 21 months, i.e., $14,515 per month. The court awarded her $14,815 per month for the full two years less the $50,000 she had been paid, or $305,560. The court also awarded her $120,000 for the loss of the option to purchase the clinic.

The damages awarded as a result of the loss of the option are supported by substantial evidence. The damage figure for loss of monthly income ($14,815) is also supported by substantial evidence. We believe, however, that the court erred in calculating damages for the full two-year

---

7. Plaintiffs' third point urged reversal of the award of punitive damages on the libel counterclaim. Our reversal of the judgment on the libel count renders that point moot; consequently, we need not address Point III.

period. The contract specifically provided that Defendant was only entitled to $5000 per month for the first three months. Therefore, the $14,815 amount should not be applied to that period.

Consequently, the judgment should reflect that Defendant was damaged in the amount of $396,115.[8] Pursuant to Rule 84.14, this court is authorized to give such judgment as the court ought to give. The judgment is reversed and remanded as to the award for libel. The judgment is hereby amended to reflect an award of $396,115 for breach of contract. In all other respects, the final judgment of the trial court is affirmed.

BARNEY, J., and BATES, C.J., concur.

---

8. The calculation is as follows: ($14,815 × 21 months) + $120,000 (option damages) − $35,000 ($50,000 paid less $15,000 for first three months).